Floyd WORTHAM, Appellant,

v.

STATE of Alaska, Appellee.

No. 7353.

Court of Appeals of Alaska.

Oct. 26, 1984.

Christine S. Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, JJ., and BURKE, Chief Justice of the Supreme Court.*

## OPINION

COATS, Judge.

Floyd Wortham was convicted, in a jury trial, of kidnapping Yance Coleman, shooting him in the abdomen, and robbing him. Wortham was also convicted of being a felon in possession of a firearm. Judge Ralph Moody sentenced Wortham to sentences totalling fifty-three years. Wortham appeals his conviction and sentence to this court.

## FACTUAL BACKGROUND

At Wortham's trial Coleman testified that he and his "common law wife" had allowed a young woman by the name of Christine Deroach to move in with them. He stated that Deroach had left his residence and had taken several items with her, including his wife's coat. At some point after Deroach had moved out of his residence, on December 23, 1981, Coleman saw Deroach walking along Fourth Avenue

* Burke, Chief Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

in Anchorage wearing his wife's coat. Coleman had Deroach enter the car, and after a heated conversation, she returned the coat.

According to Coleman, later that same evening he was at a Fourth Avenue Bar called the Alaskan Express. An acquaintance of his, Bertrand "Sugar" Price, introduced him to Floyd Wortham. Wortham, a friend of Deroach's, told Coleman that he wanted to talk to him, and he and Coleman went outside. Once outside, Wortham pulled out a revolver and forced Coleman into Price's car. Coleman stated that Price, Daniel Evans, and a pit bull dog Wortham calls "Serious Business" were also in the car. They then drove to Price's house.

After they arrived at Price's house, Evans, Coleman, and Wortham went to a back room. According to Coleman, Wortham told him to empty his pockets or remove his pants. Coleman refused and Wortham pistol-whipped him and threatened him with "Serious Business." Coleman stated that at some point when he was being pistol-whipped by Wortham, the gun discharged, and Coleman was wounded in the abdomen. Coleman yelled that he had been shot and attempted to dive through a window to escape. Coleman stated he was pulled back into the room and a watch and medallion were taken from him. Coleman was then carried to an alleyway and placed in the back seat of a car. A patrol car turned into the alley and Coleman rolled out of the car and yelled for help. The others left. The police stopped, and Coleman was taken to the hospital. Under the car, the police found the gun with which Coleman had been shot.

Wortham did not testify. However, through other witnesses he attempted to establish his theory of defense. His theory was that Deroach was a prostitute and Coleman had been her pimp. Deroach

moved from Coleman's residence and moved in with Wortham. Some time later Coleman saw Deroach on the street and took some money from her which Wortham had given her for Christmas shopping. Wortham wanted to talk to Coleman to resolve this matter so he went to the Alaskan Express with Price, who knew Coleman. According to the defense theory, Coleman voluntarily agreed to go with Wortham to Price's house to discuss the matter. Coleman was the one armed with a gun. After they got to Price's house, they went in a back room. Wortham took Coleman's weapon from him to make sure no one would get shot. He was in the process of unloading the gun when Coleman jumped at the gun. Coleman and Wortham struggled over the gun which discharged, hitting Coleman. Wortham, Price, and Evans were attempting to take Coleman to the hospital when the police arrived. At this point Wortham left because he was on parole, did not want to get involved with the police, and knew the police would take Coleman to the hospital.

At the conclusion of the trial the jury convicted Wortham on all charges.

## SEVERANCE MOTION

Wortham first argues that the trial court erred in refusing to grant his motion to sever the misconduct involving weapons charge from the other offenses. Wortham points out that the prosecution was able to introduce the fact that he had formerly been convicted of a felony as part of its proof of the misconduct involving weapons charge.[1] Had the misconduct involving weapons charge been severed from the other charges, the jury would not have been informed that Wortham had a previous felony conviction. Wortham contends that he was prejudiced in the trial of the other

---

1. AS 11.61.200(a) provides in part:

 *Misconduct involving weapons in the first degree.* (a) A person commits the crime of misconduct involving weapons in the first degree if the person

 (1) knowingly possesses a firearm capable of being concealed on one's person after having been convicted of a felony by a court of this state, a court of the United States, or a court of another state or territory;

 . . . .

charges because the misconduct involving weapons charge was not severed.

Wortham brought his motion to sever on the morning of trial. Judge Ralph Moody denied the motion on the ground that it was not timely. We find Judge Moody did not abuse his discretion in so ruling.

■ There is no question that a trial court judge has authority to find that a defendant has forfeited the right to bring a severance motion because the attorney failed to bring the motion prior to trial.

Alaska Rule of Criminal Procedure 12(b) provides in part:

*Pretrial Motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Any or all of the following shall be raised prior to trial:

. . . .

(4) Requests for a severance of charges or defendants under Rule 14.

■ Failure to make a timely motion for severance constitutes a waiver. Alaska Rule of Criminal Procedure 12(e) provides:

*Effect of Failure to Raise Defenses or Objections.* Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to section (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

*Cf. United States v. Wertz,* 625 F.2d 1128, 1132 (4th Cir.), *cert. denied,* 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980) (motions under federal rule governing effect of failure to raise defenses or objections is addressed to discretion of judge and is to be disturbed only for clear error). A.B.A. Standards for Criminal Justice, Joinder and Severance, Standard 13–3.3(a) (2d ed.1980).[2]

■ A motion for severance should normally be brought at the time of the omnibus hearing.[3] The motion for severance was not brought at that time. However, in *Fox v. State,* 685 P.2d 1267 (Alaska App.1984) we found that a trial judge abused his discretion in refusing to consider a suppression motion which was filed after the omnibus hearing was scheduled. However, in *Fox* the motion was not filed just before the trial actually started as in the instant case. In *Fox* we emphasized the strong preference which the Alaska Supreme Court and this court have for the use of monetary sanctions to assure compliance with court rules. We continue to believe that the use of sanctions which might prejudice the rights of a party should be discouraged. Generally, if a motion is filed after the omnibus hearing but before the actual day of trial, the party who files the late motion does not obtain any real advantage by filing late. The violation of the rules should be easily discouraged by the use of monetary sanctions. Unfortunately, when a motion is filed on the day of trial, a party may obtain a significant advantage. In the instant case the motion was raised orally without any citation to authority and apparently without warning. The trial judge was ready to proceed with the trial and in all probability had a jury waiting.

---

**2.** The A.B.A. Standard provides:

(a) A defendant's motion for severance of offenses or defendants must be made before trial, except that a motion for severance may be made before or at the close of all the evidence if based upon a ground not previously known. Severance is waived if the motion is not made at the appropriate time.

**3.** Alaska R.Crim.P. 12(c) provides:

*Motion Date.* At the time of the arraignment or as soon thereafter as practicable, the court shall set a time for the making of pretrial motions. In the event that additional time is required for hearing the pre-trial motions, the remaining motions shall be processed during the omnibus hearing. . . .

Alaska R.Crim.P. 16(f)(3) provides that motions should ordinarily be determined at omnibus hearings and provides, in relevant part:

Subject to constitutional limitations failure to raise at the omnibus hearing any pre-trial trial error or issue, other than the failure of the indictment to show jurisdiction or to charge an offense, constitutes waiver of such error or issue unless the party concerned does not then possess the information necessary to raise it.

This is a situation which makes it difficult for the opposing party to respond and for the trial judge to fully consider the motion before he rules. The dangers of a party obtaining an advantage from filing a late motion are significant enough that it appears to be unwise to hold that the trial judge must consider any motion and can only apply monetary sanctions. On the other hand some motions are significant enough that failure to consider those motions would be an abuse of discretion.

In the instant case, there is no question that the misconduct involving weapons charge was properly joined to the kidnapping and other charges since all the charges were "based on the same act or transaction." Alaska R.Crim.P. 8(a). The state's case consisted of proof that Wortham possessed a concealable firearm during the period he was allegedly kidnapping Coleman. The parties stipulated that Wortham had formerly been convicted of a felony. Wortham's defense was that the weapon was Coleman's. Wortham argued that he only possessed Coleman's weapon to unload it to protect himself and that his possession of the weapon was therefore privileged. Therefore, this case does not raise the problem of prejudice to the defendant which is created when two unrelated cases are joined for trial. Furthermore, severance of the misconduct involving weapons charge would have resulted in essentially the same evidence being presented twice to two different juries.

Wortham argues that the trial court erred in finding that he forfeited his right to bring the severance motion because the counsel who represented him at trial had only three weeks to prepare for the case. This switch in counsel was brought about by the fact that the state did not provide timely discovery of the fact that it was calling a witness who was represented by the Public Defender Agency, which originally was representing Wortham. This re-

sulted in the Public Defender Agency having to withdraw from Wortham's defense because of the conflict of interest. Another attorney was appointed to represent Wortham. However, although there was a switch in attorneys, Wortham was represented by counsel throughout all the pretrial proceedings and has made no showing that his failure to move for a severance was in any way related to the state's misconduct in making late discovery. There is also no indication that Wortham asked for a continuance of his trial because his attorney was unable to properly prepare for trial in the time allotted. The fact that Wortham's prior felony conviction would come in as evidence on a misconduct involving weapons charge seems apparent and there is no claim that counsel obtained any new information which would justify a failure to move for a severance at an earlier time. In fact, there were some strategic reasons for Wortham to decide to keep the charges joined. If the charges were severed, Wortham would face two trials. Although the misconduct involving weapons charge is definitely a less serious offense than the other charges, it is a class C felony with a maximum sentence of five years. Given Wortham's record, had he been acquitted of the kidnapping and related charges and convicted of misconduct involving weapons, he could very well have received a five-year sentence. Therefore, Wortham might have originally preferred to have all the charges joined in one trial so that he did not have to be acquitted twice in order to avoid a substantial jail sentence. Also, since the misconduct involving weapons charge was joined to the other charges, it acted as a lesser-included offense. Wortham might have hoped that if the jury convicted him it would only convict him of that charge. Therefore, it appears that there could have been strategic reasons for the fact that Wortham did not make his motion to sever at an earlier time.[4]

4. We recognize that there are other solutions to the problem created by the joinder of the misconduct involving weapons charge to these other charges other than completely separate trials. For instance, some courts have allowed a two-

stage jury trial. First the court could try all the charges except for misconduct involving weapons. After the jury's verdict on these other charges the same jury would then hear the evidence that Wortham had a prior conviction for

■ We also conclude that the admission of the prior felony charge did not result in such unfair prejudice to Wortham that he is entitled to a new trial in spite of the fact that his motion to sever was untimely. Wortham stipulated to the existence of the prior felony. The stipulation as to the prior conviction came in as follows:

> PROSECUTOR: I'm sorry. Your Honor, prior to commencing with the witness, [the defense attorney] and myself have a stipulation for the court as to the first-degree weapons misconduct charge that the defendant has in the past five years been convicted of a felony in the State of Alaska.
>
> DEFENSE ATTORNEY: That's correct, Your Honor.
>
> THE COURT: All right. Stipulation— the jury may accept that as a proven fact in considering it with all the other evidence in the case in connection with the charges.

The jury was not informed of the nature of the conviction and the evidence came in with minimum emphasis. There was no emphasis on the existence of the prior conviction during the remainder of the trial. Wortham points out that the trial court never gave a limiting instruction that the prior felony was admissible only for the purpose of proving the misconduct involving weapons charge. We are concerned that the court did not give a limiting instruction, but we note that Wortham never requested one. Wortham was certainly entitled to a limiting instruction if he had requested one, and the better practice would have been for the trial judge to have offered to give a limiting instruction. *See United States v. Valentine,* 706 F.2d 282, 290 n. 7 (10th Cir.1983). However, Wort-

ham might have felt that a limiting instruction was not necessary and would only have drawn more attention to the conviction. We conclude that the failure to give a limiting instruction was not plain error. We also conclude that Judge Moody did not err in refusing to decide Wortham's severance motion on the ground that the motion was not timely.

### THE DEROACH AND LUTE TESTIMONY

Coleman testified that he was an unemployed dog trainer. Wortham wanted to establish at trial that Deroach was a prostitute, that Coleman had been her pimp, and Deroach had moved from Coleman's residence to Wortham's. Wortham argued that it was necessary for him to show this background in order to show why Coleman might go with Wortham voluntarily and to show that Coleman would be biased against him. Coleman's anger at Wortham for taking Deroach from him would help Wortham explain why Coleman might attempt to grab the weapon from Wortham to shoot him. This would also help explain why Coleman would want to testify falsely that Wortham kidnapped, robbed, and assaulted him.

#### A. The Deroach Statement

Wortham first argues that the trial court erred in not letting him admit a statement which Deroach made to Officer Pelgrum Canady that she was a prostitute and was working for Coleman. Wortham argued that Deroach's statement to Officer Canady should be admissible as a statement against interest. Alaska Rules of Evidence 804(b) provides in part:

> (b) *Hearsay Exception.* The following are not excluded by the hearsay rule

---

a felony and decide the misconduct involving weapons charge. *See United States v. Franke,* 331 F.Supp. 136 (D.Minn.1971). This makes it unnecessary to inform the jury of the prior felony before they deliberate on the other charges and yet does not require two completely separate trials. It is also possible that Wortham could have worked out an arrangement where he stipulated to the prior felony and stipulated that the jury did not have to decide that element of the misconduct involving weapons offense.

The jury could then have just been presented with a special interrogatory to have them decide whether Wortham's possession of a firearm was temporary and was necessitated by self-defense. *See Morgan v. State,* 661 P.2d 1102, 1104 n. 4 (Alaska App.1983).

However, Wortham did not ask for any of these alternatives, he asked for a severance. Given the lateness of his motion he can hardly complain that neither the state nor the court thought of these other alternatives.

if the declarant is unavailable as a witness:

. . . .

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Although the record does not reflect what efforts were made to obtain Deroach for trial, the parties do not appear to contest that Deroach was not available. *See* A.R.E. 804(a). Judge Moody ruled that Deroach's statement was not against her interest and refused to admit the statement.

■ "The admissibility of evidence is largely within the trial court's discretion and its rulings will not be overturned on appeal in the absence of an abuse of discretion." *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980). *See also Hohman v. State,* 669 P.2d 1316, 1321 (Alaska App. 1983).

As one commentator has noted:

The decision to admit an out-of-court statement offered as a declaration against penal interest should be based upon an examination of various factors that indicate that the declarant would not have asserted the specific facts unless he or she believed them to be true.

Note, *Declarations Against Penal Interest: Standards of Admissibility Under An Emerging Majority Rule,* 56 Boston U.L.Rev. 148, 152 (1976). The following factors have been proposed to differentiate declarations against interest from inadmissible hearsay:

First, the declaration must have the potential of jeopardizing the personal liberty of the declarant; second, the declaration must be against interest at the time it is made; third, the declarant must perceive the disserving quality of the statement; fourth, the relevant portion of the statement must be related to the disserving character of the statement; and fifth, there must be no probable motive to falsify the declaration. In addition to determining whether these five factors are present, a court should impose a sixth factor by inquiring into the mental state of the declarant at the time the declaration was made. The declaration against interest exception rests upon the probable reactions of the reasonable person, and, if the declarant was not acting reasonably at the time the statement was made, the statement itself may be unreliable.

*Id.* at 155 (footnotes omitted). *See also* Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule,* 58 Harvard L.Rev. 1 (1944). We conclude Judge Moody did not abuse his discretion in refusing to admit Deroach's statement. The offer of proof is confusing, but it appears that Deroach gave a statement to the police after Coleman had been shot. The statement apparently was taken as part of the investigation of the shooting. Deroach claimed to be a strip dancer and claimed she worked for Coleman. At one point in the interview she answered "yes" to the question of whether she was a prostitute. Had Wortham sought to merely establish that Deroach said she was a prostitute, that might have created a close question. However, there was no indication that Deroach was under any danger of being prosecuted for being a prostitute at the time she made the statement. The part of the statement in which Deroach said that Coleman was her pimp was clearly not a declaration against her interests. Deroach's statement under these circumstances constituted a classic case of Deroach accusing another of a crime. There is no reason to give her statement any credibility since she would have every motive to give the police a false name. We conclude Judge Moody did not

abuse his discretion in refusing to admit Deroach's statement.

### B. Testimony of Charles Lute

Wortham moved for reconsideration following Judge Moody's decision not to admit Deroach's statement. Judge Moody had earlier indicated that he felt that whether Coleman was a pimp was irrelevant, and Wortham sought to have this ruling changed. Ultimately, Judge Moody concluded that whether Coleman was a pimp was relevant to show a possible motive for Coleman to be biased against Wortham. However, he reaffirmed that Wortham could not introduce this evidence through Deroach's statement. Judge Moody then ruled that Wortham could impeach Coleman by asking him if he was a pimp. Outside the presence of the jury, Wortham did ask Coleman whether he was a pimp and whether Deroach worked for him. Coleman denied that he was a pimp, and Wortham did not attempt to ask these questions in the presence of the jury.

Wortham then made an offer of proof through the testimony of Charles Lute. Lute testified, outside the presence of the jury, that he had known Coleman for three or four years. He indicated he had worked with Coleman and that they were both pimps. After making this offer of proof, Wortham asked Judge Moody to delay ruling on the admissibility of this testimony until he presented another witness.

The following day, Wortham continued his offer of proof with the testimony of Tony Goods. Goods testified, outside the presence of the jury, that Deroach worked for Coleman as a prostitute. She indicated that Coleman told her that he was upset because Wortham had interfered with his business by taking Deroach off the street.

Judge Moody ruled that Goods could testify. Thus, Wortham was able to introduce evidence, through Good's testimony, that Coleman was a pimp. Goods told the jury: "I was around him when he exchanged money from his women." She also stated that Deroach "was [Coleman's] prostitute." However, Good's testimony was severely impeached by the state during cross-examination.

■ Following Good's testimony, Wortham indicated to the court that he wanted to present Lute's testimony to the jury. However, he only indicated that he wanted to call Lute to testify as an expert witness on how pimps operate. Essentially Wortham wanted to have Lute explain that a pimp would not go to the police if he had a dispute with someone like Wortham, but that the pimp and Wortham would try to work things out. Judge Moody refused to allow Lute to testify on this basis. Judge Moody did not abuse his discretion in refusing to admit Lute's testimony since it was offered on this narrow ground. The jurors themselves would certainly reason that a pimp would prefer to not contact the police. There is simply no reason to believe that Lute's testimony would have assisted the jury in understanding Wortham's case. A.R.E. 702; A.R.E. 403.

### DISCOVERY VIOLATION

Wortham argues that his case should be reversed because of an alleged discovery violation by the prosecution. A certain amount of background information is necessary to understand our disposition of this issue.

Goods was a defense witness serving time in a Salem, Oregon penitentiary on charges of forgery and failure to appear. She was apparently transported to Alaska, at the request of the defense, in order to testify at Wortham's trial.

The afternoon before Goods testified Officer Canady talked to her on the telephone. He apparently took notes but did not make a police report on what she had said. Later that same afternoon Goods talked to Wortham's attorney. Officer Canady also talked with Goods the next morning before she testified. Prior to putting Goods on the stand, Wortham's attorney met Officer Canady in the hallway outside the courtroom and asked Officer Canady for a copy of his notes of the conversation

with Goods. Officer Canady told the attorney that his notes were back in the office.

Although Wortham's attorney knew of the notes' existence prior to the start of trial on June 24, 1982, he did not make a formal request for discovery, nor did he request the court for a continuance in order to get the notes and assess their impact on his case. Instead, he chose to go ahead with the case and put Goods on the stand.

The prosecutor began his cross-examination by asking Goods the following question:

Q Good morning, ma'am. Last night you were kind enough to speak to the investigator and myself by telephone, is that right?

To this, the defense made no objection. There was no objection based on the lack of discovery during the prosecutor's cross-examination. Only on recross-examination did Wortham object because he had not been given discovery. After that objection the prosecutor concluded his cross-examination after three more questions.

The interviews which the state conducted took place during trial. Goods was a defense witness, the defense had full access to her and there was no reason to believe that Goods would tell the state any more than she told the defense. The defense attorney was fully aware that the interviews had taken place and had inquired about the notes. When the defense attorney found that the notes were not readily available, rather than making a motion for the notes and perhaps asking for a continuance, he elected to go on with the trial. Even during Goods's cross-examination, he failed to object, ask for production of the notes, or request a continuance. The only objection was during the very last part of the recross-examination of Goods by the state.

Wortham has not demonstrated any bad faith on the part of the state, nor has he established that the notes or even knowledge of the entire substance of Officer Canady's interviews with Goods would have aided him in any way. On this record, as far as we know, Goods told Wortham's attorney everything that she told the state. Assuming that there was a discovery violation, we conclude that on this record Wortham has forfeited any right to relief. *See Miller v. State*, 648 P.2d 1015, 1018 n. 1 (Alaska 1982) (trial court did not err in allowing the state to present the testimony of a previously undisclosed rebuttal witness: "The state's dereliction could have been cured by a continuance ... and therefore the defendant's failure to request a continuance constitute[d] a waiver of his right to object.")

### THEORY OF THE CASE INSTRUCTION

Wortham next argues that the trial court erred in refusing to give the following proposed instruction which summarized his theory of the case:

The defendant in a criminal case is entitled to have the jury consider any theory of defense which is supported by the law and has some foundation in the evidence.

It is defendant Floyd Wortham's theory of the case that no kidnapping, assault, robbery or unlawful possession of a firearm occurred. That at all times Mr. Coleman voluntarily accompanied defendant, that it was Mr. Coleman who possessed the firearm involved in this case, that he was wounded as the result of his own actions in a struggle over the weapon, that at no time did defendant try to steal any of Mr. Coleman's property, and that any possession of a concealable firearm was done by defendant out of necessity in self-defense.

The defense theory of this case alleges that the defendant is the subject of false accusations by Yance Coleman who he asserts has testified untruthfully due to personal bias and to protect himself from accusations of crime and further Coleman's testimony is inconsistent with the physical evidence in the case and is incapable of belief.

If, from the evidence you have heard in the case there are any facts adduced

to support the defendant's theory, and if they are sufficient to raise a reasonable doubt as to his guilt as to any of the charges, then you must give the benefit of that doubt and return a verdict of not guilty as to that charge.

Wortham directs our attention to a number of cases from other jurisdictions where courts have permitted theory of defense instructions. *See United States v. Vole*, 435 F.2d 774 (7th Cir.1970); *People v. Moya*, 512 P.2d 1155 (Colo.1973); *Poore v. State*, 94 N.M. 172, 608 P.2d 148 (1980).

 Failure to give such an instruction where there is evidence and legal support has been held reversible error "unless the defendant's theory is encompassed in other instructions." *People v. Moya*, 512 P.2d at 1156. *See* also *United States v. Conroy*, 589 F.2d 1258, 1273–74 (5th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979) (instruction which was given conveyed the substance of defense theory even if not in the exact language requested). However, the Alaska Supreme Court has never required the trial courts to draw up specific instructions summarizing the defendant's theory of the case. Wortham cites *Ferguson v. State*, 488 P.2d 1032, 1038–39 (Alaska 1971), where the court held that the trial court must give an alibi instruction where the issue is properly raised and the defendant requests the instruction. However, in that case the court pointed out that the majority of courts require the trial court to instruct on alibi if the defendant makes a proper request. Also, an alibi instruction is generally a pattern jury instruction, not one which is specifically made up to set forth the defendant's theory. We believe that the defendant is entitled to have the court instruct on relevant propositions of law. We do not believe that the trial court should be required to draft up or approve a unique instruction tailor-made for each case which encompasses the defendant's theory unless the unique instruction will substantially aid the jury in arriving at a just verdict.

 In Wortham's case the court gave instructions which informed the jury of the elements of the crimes with which Wortham was charged, the law of self-defense and necessity, and the burden of proof. The court also instructed on witness credibility and bias. Wortham's theory of defense was adequately covered in the instructions which were given. Furthermore, in closing argument Wortham's attorney was able to argue the defense theory. He argued that Coleman voluntarily accompanied Wortham because Coleman had a gun. He argued that the physical evidence of where Coleman was shot was inconsistent with Coleman's testimony that he never had his hands on the gun. He argued that Wortham had the gun momentarily during the scuffle with Coleman. He argued that Wortham never attempted to rob Coleman. He argued that Coleman was lying to cover up his own criminal liability and because of his hatred of Wortham. We believe that the instructions which the court gave fully informed the jury of the law which applied to the facts of the case. Wortham was able to fully present his case to the jury on the basis of those instructions. We find no error.

## FINAL ARGUMENT

 Wortham next contends that the prosecutor made improper comments during his final argument. He argues that we should reverse the case based upon the prosecutor's argument. We have reviewed the final arguments in the case. We note that many of the matters which Wortham now raises concerning the final argument are matters that he did not object to at trial. We conclude that the prosecutor's final argument was not unduly prejudicial.

## SENTENCE

Judge Moody sentenced Wortham to a total of fifty-three years of imprisonment, broken down as follows: fifteen years on Counts I and V, assault in the first degree, each count to run concurrently; three years on Count II, misconduct involving weapons in the first degree, to run consecutively with Counts I and V; twenty years on Counts IV and VI, kidnapping, to run

consecutively with other counts; fifteen years on Count III, robbery in the first degree, to run consecutively with Counts I, V and II.[5]

Wortham was thirty-five years old at the time of these crimes. In convicting Wortham of these charges, the jury found that he kidnapped Coleman with the intent to physically injure him and that he intentionally shot him, causing serious physical injury.

At the time of the incident Wortham had just finished serving concurrent sentences of five years with one and one-half years suspended for sale of cocaine and three and one-half years for two counts of perjury. Wortham was on parole and had been on parole approximately four months when these incidents occurred. The sale of cocaine conviction was from 1979 and the perjury convictions from 1980. (Wortham committed perjury in his trial for sale of cocaine.) Wortham has a juvenile record and was institutionalized as a juvenile in California. In 1964 he was convicted of burglary and trespassing (fifteen days or $83 fine); 1967, sale of marijuana (five years to life) and fraudulent possession of an unfinished check (six months to fourteen years, concurrent to the marijuana charge). In 1968 his probation was revoked and he was sentenced to six months to fourteen years with five years to life, concurrent. Thus, Wortham's prior record consists of five prior felony offenses. However, none of the prior offenses appear to be crimes of violence.

Judge Moody found that Wortham's sentence was subject to an aggravating factor, that Wortham had been convicted of three or more felony convictions. AS 12.55.-155(c)(15). He also found that his sentence was subject to a mitigating factor, that, except for the misconduct involving weapons charge, Wortham's former charges were less serious offenses than his current charges. Former AS 12.55.155(d)(8).

■ Wortham argues that Judge Moody erred in imposing consecutive sentences. However, Judge Moody was authorized to do so. *State v. Occhipinti,* 562 P.2d 348 (Alaska 1977); *Wilson v. State,* 670 P.2d 1149, 1154 (Alaska App.1983). He was also free to give little weight to the mitigating factor. *Juneby v. State,* 641 P.2d 823, 833 (Alaska App.1982), *aff'd on rehearing,* 665 P.2d 30 (1983). The only question is whether the total sentence of fifty-three years is excessive.

■ Wortham's sentence is not clearly mistaken. First, Judge Moody could have properly given great weight to the jury's finding that Wortham kidnapped Coleman, intending to injure him and that he intentionally shot him and then robbed him. Second, Wortham has a record of five prior felony convictions. Third, Wortham has served sentences of greater than one year and obviously has not been deterred by these former sentences. In addition, Wortham was on parole at the time of these offenses and had just completed a lengthy sentence four months before. Under these circumstances we conclude that the sentence was not clearly mistaken.[6]

---

**5.** Counts I and V charged Wortham with assault under two theories: AS 11.41.200(a)(1) and AS 11.41.200(a)(3). Counts IV and VI charged Wortham with kidnapping under two theories: AS 11.41.300(a)(1) and AS 11.41.300(a)(1)(E).

**6.** Counts I and V charged Wortham with assault under two theories. Counts IV and VI charged Wortham with kidnapping under two theories. *See supra* note 5. Judge Moody imposed concurrent sentences, indicating that if Wortham's case were reversed on appeal this would allow the state to retry Wortham on all theories without raising a double jeopardy problem. He indicated that if the convictions were upheld, he would dismiss one of the kidnapping and one of the assault convictions. The state agrees that Wortham should have only one conviction for kidnapping and one for assault. The state suggests that Judge Moody could merge the counts and impose only one sentence. It appears to us that the state is correct that the counts could merge. However, we leave the form of the final judgment to the discretion of the trial judge as long as the ultimate result is that Wortham only receives a sentence for one assault conviction and one kidnapping conviction.

*McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.[7]

BRYNER, C.J., not participating.

---

7. Justice Burke and Judge Singleton conclude that the fifty-three year sentence was not clearly mistaken. Although I agree that Wortham is a serious offender for whom a lengthy sentence is appropriate, I would not approve a sentence in excess of forty years. Wortham's case appears to me to be similar to *Larson v. State,* 688 P.2d 592, 600 (Alaska App.1984) and *Nix v. State,* 653 P.2d 1093, 1101 (Alaska App.1982) where this court reduced sentences to forty years.