**Richard Todd YEARTY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–2776, A–2792.**

Court of Appeals of Alaska.

Feb. 15, 1991.

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.*

## OPINION

BRYNER, Chief Judge.

Richard Todd Yearty was convicted in two jury trials of four counts of kidnapping, five counts of first-degree sexual assault, one count of first-degree sexual abuse of a minor, two counts of attempted first-degree sexual assault, and one count of attempted first-degree sexual abuse of a minor. Superior Court Judges Karl S. Johnstone and James K. Singleton imposed partially consecutive sentences totaling forty years in prison. Yearty challenges his convictions on various grounds and argues that his sentence is excessive. We affirm Yearty's convictions and his composite sentence but remand for entry of a modified judgment.

## FACTS

### A. The Goose Lake Incident

On the evening of October 21, 1987, twelve-year-old J.L. was riding his bicycle on the bike path near Goose Lake in Anchorage when he passed Yearty walking in the opposite direction. Yearty called to J.L., asking what time it was. J.L. stopped, looked at his watch, and told Yearty it was 6:48. As J.L. remounted and began to pedal away, Yearty grabbed his bike and threw J.L. and the bike off the path, into the bushes. Yearty pulled J.L. off the bike and dragged him about 100 yards into the woods, away from the path.

Yearty told J.L. that he wanted to give him a blow job. He pulled J.L.'s pants down and began to perform fellatio on him, stopping every several minutes to sniff cocaine from a vial that he pulled from his pocket. After a while, Yearty pulled his own pants down, straddled J.L., and attempted to insert the boy's penis into his own anus. His effort failed, and Yearty resumed sucking on J.L.'s penis. After a second unsuccessful attempt at inserting J.L.'s penis into his own anus, Yearty got dressed and fled.

Leslie A. Hiebert, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Yearty's assault lasted for well over half an hour, from about 6:48 p.m. until approximately 7:30 p.m. J.L. cried and repeatedly begged to be let go during that time. After Yearty fled, J.L. found his bike, rode home, and told his parents what had happened. They notified the police.

### B. The East High Incident

Within an hour of the Goose Lake assault, Yearty attacked a woman at nearby East High School. At approximately 8:30 p.m., J.C. was getting into her car in the East High parking lot after finishing a class. Yearty stepped between J.C. and the open car door. He said, "I'm not going to hurt you. I just want to eat you." J.C. kicked Yearty in the crotch, and a struggle ensued.

During the struggle, J.C. began to scream. Yearty tried to stop her by pushing his fingers down her throat. J.C. bit him. J.C. stopped screaming when Yearty threatened to kill her. Yearty pushed her back into the car, but J.C. grabbed a tire iron from the back seat and tried to hit Yearty with it. Yearty struggled for the tire iron and eventually managed to wrest it from her. He told J.C. to remove her pants. She refused, telling him to get out of her car. Yearty then terminated the attack and left the car. J.C. ran back into the school. She found two janitors and told them that a man had attempted to rape her. They called the police.

### C. The Carrs Supermarket Incident

Eight days after the Goose Lake and East High incidents, Yearty attacked his third victim. At about 11:00 p.m. on the night of October 29–30, 1987, M.M. was working alone as a clerk in the bakery section of the Carrs Supermarket at Dimond Boulevard and Jewel Lake Road in Anchorage. Yearty grabbed M.M. and forced her into a closet behind the bakery counter. With his hand over her mouth, Yearty told M.M. he was going to eat her. He pulled off M.M.'s pants and performed cunnilingus on her. He then inserted his fingers into M.M.'s vagina and tried to penetrate her with his penis. Yearty also forced M.M. to perform fellatio on him. At one point, he stopped the assault to ingest some cocaine.

At around midnight, James Hankins, a Carrs employee, discovered Yearty and M.M. in the closet. Yearty covered M.M.'s mouth and told Hankins to leave. Hankins thought Yearty and M.M. were engaged in consensual relations and shut the closet door. He returned a short time later and told them they would have to come out.

After getting dressed, Yearty forced M.M. to walk with him from the closet toward the store exit. M.M. was visibly distraught, and mouthed to Hankins, "I've been raped." Hankins told Yearty to release M.M. When Yearty refused, Hankins alerted other store employees.

As other employees responded to Hankins' call, Yearty grabbed M.M. in a headlock and pushed a screwdriver against her neck. Telling everyone to stay back, he dragged M.M. outside, toward his car. Once outside, M.M. managed to break away. Yearty attempted to flee but was pursued by Carrs employees, who were soon joined by a police officer. The officer eventually apprehended Yearty.

Upon arresting Yearty for the Carrs incident, the police noticed that he matched the descriptions that J.L. and J.C. had given of their assailant after the Goose Lake and East High incidents. The police placed Yearty's picture in a photographic lineup and displayed the lineup to J.L. and J.C. Both identified Yearty.

### SEVERANCE

Yearty was charged in two separate indictments, one dealing with the Goose Lake and East High incidents, and the other with the Carrs Supermarket incident. For the Goose Lake incident, Yearty was charged with kidnapping, first-degree sexual assault, first-degree sexual abuse of a minor, attempted first-degree sexual assault, and attempted first-degree sexual abuse of a minor. For the East High incident, Yearty was charged with attempted

first-degree sexual assault and third-degree assault.[1]

Because the charges stemming from the Goose Lake and East High incidents were joined in the same indictment, they were set for trial together. Prior to trial, Yearty moved to sever the Goose Lake charges from the East High charges, contending that he was entitled to automatic severance under *Johnson v. State,* 730 P.2d 175 (Alaska App.1986). Judge Johnstone denied the motion. Yearty renews his severance argument on appeal.

Yearty's reliance on *Johnson* is misplaced. The rule of automatic severance discussed in *Johnson* applies only when joinder is based exclusively on Alaska Criminal Rule 8(a)(1), which permits similar charges to be filed together. *See Newcomb v. State,* 800 P.2d 935, 943 (Alaska App.1990). A separate provision of Criminal Rule 8(a) applies to Yearty's case.

Under Criminal Rule 8(a)(3), joinder is proper when charges are "based on two or more acts or transactions connected together...." The Goose Lake and East High incidents were closely linked in time, place, and circumstance. The connection is particularly significant because Yearty's primary defense at trial was mistaken identity. In the circumstances of this case, the nexus between the Goose Lake and East High charges was sufficient to permit their joinder as charges "connected together," within the meaning of Criminal Rule 8(a)(3). *See, e.g., People v. Poggi,* 45 Cal.3d 306, 246 Cal.Rptr. 886, 894–895, 753 P.2d 1082, 1090 (1988); *State v. Lucas,* 146 Ariz. 597, 708 P.2d 81, 85 (1985); *Shietze v. State,* 724 P.2d 262, 264 (Okl.Cr.App.1986).

Because the charges stemming from the two incidents were properly joined in the first instance, Yearty bore the burden of establishing actual prejudice in order to justify severance. *See* Alaska Criminal Rule 14; *Cleveland v. State,* 538 P.2d 1006, 1008 (Alaska 1975); *Richards v. State,* 451 P.2d 359, 362 (Alaska 1969); *Newcomb,* 800 P.2d at 943; *Collins v. State,* 778 P.2d 1171, 1174 (Alaska App.1989). Yearty made no showing of prejudice below, argu-

ing only that he had a right to automatic severance. Nor has he made a convincing showing of prejudice on appeal. We find no error.

## SPEEDY TRIAL

Yearty's trial on the Goose Lake and East High charges was initially set for the week of March 14, 1988. On March 11, an assistant public defender appeared at calendar call on Yearty's behalf and informed the court that the assistant public defender assigned to try Yearty's case had agreed with the state to a continuance of the trial until May 16. The court granted the continuance.

The public defender agency was subsequently allowed to withdraw, and Yearty obtained new counsel. Prior to trial, he moved to dismiss, alleging that his right to a speedy trial under Criminal Rule 45 had been violated because he did not personally consent to the March 11 continuance. The superior court denied Yearty's motion. On appeal, Yearty contends that the court erred.

Yearty's claim lacks merit. The attorney who appeared for Yearty at the March 11, 1988, calendar call was empowered to relinquish Yearty's rights under Criminal Rule 45 without Yearty's personal waiver. *Snyder v. State,* 524 P.2d 661, 664 (Alaska 1974). Absent an affirmative showing to the contrary, we must assume that Yearty's counsel requested the continuance until May 16 with Yearty's knowledge and consent. *Henson v. State,* 576 P.2d 1352, 1356 n. 9 (Alaska 1978).

Yearty asserts for the first time on appeal that his counsel at the March 11 hearing mistakenly moved for a continuance until May 16 instead of March 16. The record, however, fails to support this assertion. Moreover, Yearty did not advance this claim below and is consequently precluded from relying on it on appeal. *See* Criminal Rule 45(f); *James v. State,* 567 P.2d 298, 299–300 (Alaska 1977); *Trudeau v. State,* 714 P.2d 362, 366 (Alaska App.

---

**1.** The superior court eventually dismissed the third-degree assault charge.

1986). The superior court did not err in denying Yearty's motion to dismiss.

## VOLUNTARINESS OF FALSE EXCULPATORY STATEMENTS

■ An Anchorage police officer interviewed Yearty twice on the morning of his arrest. One interview occurred at approximately 2:00 a.m., October 30, 1987; the other at about 8:00 a.m. On both occasions, Yearty was advised of his rights, waived them, and spoke with the officer, making a number of false exculpatory statements.

Yearty moved to suppress his statements, claiming that they were involuntary. After hearing a tape recording of the statements and considering testimony from the officer who conducted the interrogation, Judge Singleton rejected Yearty's claim. The judge found that although Yearty was tired and had taken some drugs, neither factor significantly impaired his ability to knowingly and voluntarily waive his rights. The judge found Yearty oriented as to time, place, and circumstances; his answers to questions were coherent, rational, and responsive. The judge further found no evidence of coercion or overreaching by Yearty's interrogator.

Some of Yearty's false exculpatory statements were introduced against him at trial. On appeal, he again claims the statements were involuntary. However, there is substantial evidence in the record to support the superior court's factual findings; those findings are not clearly erroneous. Having independently considered the totality of the circumstances in light of the superior court's factual findings, we agree that Yearty's intoxication and fatigue were not so substantial as to render his statements involuntary. *See, e.g., State v. Ridgely*, 732 P.2d 550, 555–56 (Alaska 1987); *Stobaugh v. State*, 614 P.2d 767, 771 (Alaska 1980); *Collins v. State*, 778 P.2d 1171, 1175 (Alaska App.1989).

## SENTENCING ISSUES

Yearty's assault on twelve-year-old J.L. near Goose Lake resulted in his conviction of five crimes. For dragging J.L. into the woods and restraining him there during the sexual assault, Yearty was convicted of kidnapping. For his acts of fellatio, Yearty was convicted of both first-degree sexual assault and sexual abuse of a minor in the first degree. For his unsuccessful efforts to engage in anal penetration with J.L., Yearty was convicted of attempted first-degree sexual assault and attempted sexual abuse of a minor in the first degree. Judge Singleton imposed concurrent sentences totaling fifteen years for these offenses.[2]

Yearty was convicted of a single count of attempted first-degree sexual assault for the incident at East High involving J.C. Judge Singleton sentenced Yearty to ten years for the offense and ordered the sentence to be served consecutively to the sentences arising out of the Goose Lake incident.

The Carrs Supermarket incident resulted in convictions on seven counts. Yearty was convicted of three separate counts of kidnapping M.M.: one count for restraining M.M. with intent to use her as a hostage, one count for restraining M.M. with intent to sexually assault her, and one count for restraining M.M. with intent to facilitate his sexual assault of her. Yearty was also convicted of four counts of first-degree sexual assault, each count alleging a different type of sexual penetration: fellatio, cunnilingus, digital penetration, and genital intercourse. Judge Johnstone sentenced Yearty to a fifteen-year term for each of the seven offenses, making the sentences concurrent with each other but directing them to be consecutive to the twenty-five year composite term imposed by Judge Singleton for the Goose Lake and East High incidents. Yearty's sentence for all cases thus totaled forty years.

2. For the kidnapping, first-degree sexual assault and first-degree sexual abuse of a minor convictions, Judge Singleton imposed terms of fifteen years. For the attempted first-degree sexual assault and attempted first-degree sexual abuse of a minor convictions, the judge imposed ten-year sentences. All five of the sentences were concurrent.

## A. Double Jeopardy

Yearty first alleges that imposition of separate sentences for various offenses arising from the Goose Lake and Carrs Supermarket incidents violated the constitutional prohibition against double jeopardy. Alaska Const., art. I § 9. We must consider this argument even though Yearty raises it for the first time on appeal. *Clifton v. State*, 758 P.2d 1279, 1285 (Alaska App.1988).

In support of his double jeopardy argument, Yearty initially points out that the Goose Lake and Carrs Supermarket incidents each involved a continuing course of conduct involving a single victim. Yearty advances the generalized claim that, for this reason, each incident must be regarded as a single offense.

Yearty's double jeopardy analysis is overly simplistic. Separate convictions and sentences for offenses arising out of a single transaction are permissible and do not violate double jeopardy when the offenses involve differences in intent or conduct, or when the statutory provisions that have been violated protect societal interests that are significantly different. *See, e.g., State v. Dunlap*, 721 P.2d 604, 608–09 (Alaska 1986); *Mead v. State*, 489 P.2d 738, 743 (Alaska 1971). The appropriateness of multiple convictions and sentences depends on a comparison of the elements and purposes of the statutes violated. *Whitton v. State*, 479 P.2d 302, 312 (Alaska 1970).

### 1. *Merger of counts stemming from the Goose Lake incident*

As to the Goose Lake incident, Yearty asserts that his kidnapping conviction merges with his sexual assault and abuse convictions. However, this court has previously recognized that kidnapping and sexual assault convictions arising from the same transaction do not merge. *See Barry v. State*, 675 P.2d 1292, 1297 (Alaska App. 1984); *Wilson v. State*, 670 P.2d 1149, 1155 (Alaska App.1983). Yearty cites *Alam v. State*, 776 P.2d 345 (Alaska App.1989), for the contrary conclusion. *Alam*, however, did not deal with merger. Rather, it discussed the type of evidence necessary to establish "restraint," an element of kidnapping. *See* AS 11.41.300(a). *Alam* held that, when a defendant is charged under AS 11.41.300(a)(1)(C) with committing a kidnapping by restraining the victim with intent to commit a sexual assault, the restraint must go beyond that which was incidental to the sexual assault. *Alam*, 776 P.2d at 349.

In Yearty's case, the evidence relating to the Goose Lake incident established that Yearty's restraint of J.L. went significantly beyond that which was merely incidental to the sexual assault. Yearty pulled J.L. off the bike path, dragged him to a secluded area several hundred feet away, and there held him captive for almost an hour. Because this evidence, when viewed in the light most favorable to the state, would allow reasonable jurors to conclude that the state met its burden of proving guilt beyond a reasonable doubt, it was sufficient to support Yearty's conviction for kidnapping. *Dorman v. State*, 622 P.2d 448 (Alaska 1981).

Yearty also asserts that his convictions for attempted sexual assault and abuse must merge with his convictions for the corresponding completed offenses. Yearty fails to recognize that the two attempt counts involved different conduct than the two completed offenses. Yearty's charges of first-degree sexual assault and first-degree sexual abuse of a minor were for the acts of fellatio that he committed upon J.L., whereas the charges for attempted first-degree sexual assault and attempted first-degree sexual abuse of a minor were for his unsuccessful efforts at anal intercourse.

In *Rodriguez v. State*, 741 P.2d 1200, 1207–08 (Alaska App.1987), we held that separate convictions and sentences arising from a single criminal episode of sexual assault or abuse are permissible when each conviction is for a different type of sexual penetration. *See also Johnson v. State*, 762 P.2d 493, 495 (Alaska App.1988) ("Separate convictions for multiple acts of penetration involving different openings of the victim's or the defendant's body are per-

missible."). Because Yearty's attempt convictions were based on distinctly different types of sexual penetration than those involved in his sexual assault and abuse convictions, the attempts do not merge with the completed offenses.

■ A more troublesome issue is whether Yearty's conviction for first-degree sexual assault should merge with his conviction for first-degree sexual abuse of a minor, and, likewise, whether his conviction for attempted first-degree sexual assault should merge with his conviction for attempted first-degree sexual abuse of a minor. Each pair of charges was based on precisely the same conduct—in the case of the completed offenses, Yearty's acts of fellatio upon J.L.; in the case of the attempts, his efforts at anal penetration with J.L.

Despite the identical conduct in the two pairs of charges, the state forcefully argues that separate convictions and sentences should be permitted. According to the state, the offenses of sexual assault and sexual abuse of a minor involve different statutory elements and protect differing societal interests. The state points out that, under circumstances arguably analogous to the present case, the Alaska Supreme Court has upheld multiple convictions for a criminal act violating two different statutes. *See Catlett v. State*, 585 P.2d 553 (Alaska 1978); *Mead*, 489 P.2d at 743.

Although we find the issue close, we reject the state's argument. The state based its charges of first-degree sexual assault and attempted first-degree sexual assault on AS 11.41.410(a)(1), which required it to establish that Yearty sexually penetrated (or attempted to sexually penetrate) J.L. without J.L.'s consent. The state based its charges of sexual abuse of a minor in the first degree and attempted sexual abuse of a minor in the first degree on AS 11.41.434(a)(1), which required it to establish that Yearty engaged in sexual penetration (or attempted sexual penetration) with J.L., that Yearty was sixteen years of age or older, and that J.L. was under thirteen years of age. These stat-utes plainly involve different elements: for the former, the state must prove the victim's lack of consent; for the latter, lack of consent need not be shown but the victim's age must be less than thirteen years, and the defendant must be at least sixteen years old. The state points out that the evidence in this case satisfied the elements of each statute. J.L. clearly did not give his consent to Yearty's sexual advances; Yearty was more than sixteen years old and J.L. was under thirteen years old. The state reasons that separate convictions for sexual assault and abuse should thus be allowed.

However, the fact that the state's proof satisfied the differing statutory elements is not necessarily significant for double jeopardy purposes. The sexual abuse and the sexual assault statutes are aimed at the same basic purpose: to protect victims from socially unacceptable sexual contacts. The sexual assault statute, focusing on potential victims regardless of age, achieves this purpose by requiring that the victim's lack of consent be affirmatively proved. The sexual abuse of a minor statute, focusing more narrowly on children, achieves the same purpose by substituting the child's age (and the age of the defendant) for proof of actual lack of consent.

The substitution of age as an element for lack of consent is not reflective of a shift in the basic purpose of the statute, but rather of the legislature's practical recognition that a child of under thirteen years is incapable of giving meaningful consent to sexual contact. Virtually every case involving sexual abuse of a child is, in this respect, nonconsensual; because no case of child sexual abuse involves conduct that is truly consensual, it is difficult to conceive of a situation in which an act of sexual abuse on a child would not also be an act of sexual assault. Thus, while the degree of force or coercion used by the defendant and the extent of resistance by the child can certainly be considered in determining the seriousness of the defendant's conduct for sentencing purposes, affirmative proof of a child's actual lack of consent does not establish a new or separate crime.

For this reason, we conclude that a single act of sexual penetration with a child cannot properly support separate sentences and convictions for both sexual assault in the first degree and sexual abuse of a minor in the first degree. Yearty's convictions for sexually assaulting J.L. and sexually abusing J.L. must merge, as must his convictions for attempted sexual assault and attempted sexual abuse.

### 2. Merger of counts stemming from the Carrs Supermarket incident

As to the Carrs Supermarket incident, Yearty asserts that his four separate convictions for sexual assault in the first degree must merge into a single sexual assault conviction. He also asserts that his three convictions for kidnapping merge with each other and with the sexual assaults.

▆▆ Yearty's claim that the four counts of sexual assault merge with each other has no merit. The four separate counts for which Yearty was convicted charged four distinct types of sexual penetration. As we have previously explained, each count thus subjected Yearty to a separate conviction and sentence, even though all counts arose from the same criminal episode. See Rodriguez, 741 P.2d at 1207.[3] Yearty's claim that his convictions for kidnapping M.M. must merge with his convictions for sexually assaulting her is similarly without merit since kidnapping and sexual assault do not merge. Barry, 675 P.2d at 1297; Wilson, 670 P.2d at 1155. As we previously explained, Alam is inapposite; here, the evidence was sufficient to support a finding of restraint going beyond that which was incidental to Yearty's sexual assault.

▆▆ The relationship among the three counts of kidnapping relating to M.M. is more problematic. All three counts involve the same victim and a single, continuing episode of restraint. Although the character of the restraint changed somewhat during the course of the incident—beginning with Yearty's act of dragging M.M. into a closet and ending with Yearty holding her hostage as they exited the store—the entire episode centered on Yearty's sexual assault and his attempt to flee the scene of the offense.

Each kidnapping count was based on a different subparagraph of Alaska's kidnapping statute:[4] Count V charged Yearty with restraining M.M. with intent to use her as a shield or hostage, in violation of AS 11.41.300(a)(1)(B); Count VI charged him with restraining M.M. with intent to commit sexual assault on her, in violation of AS 11.41.300(a)(1)(C); and Count VII charged him with restraining M.M. with intent to facilitate the commission of a felony (his sexual assault of M.M.) or flight after the commission of a felony, in violation of AS 11.41.300(a)(1)(E).

As the state concedes, Count VI, charging restraint with intent to commit sexual assault in violation of subparagraph (a)(1)(C), involved virtually the same conduct and intent as Count VII, charging restraint with intent to facilitate the commission of the sexual assault in violation of

---

**3.** The state has noted a potential inconsistency between Rodriguez, which upheld separate convictions for different types of sexual penetration committed during a single episode, and Oswald v. State, 715 P.2d 276, 280 (Alaska App.1986), which held separate convictions impermissible for a single episode involving an act of digital penetration and an act of genital intercourse. The potential inconsistency is relevant here because one of Yearty's convictions was for digital penetration. To the extent that Oswald is inconsistent with our subsequent decision in Rodriguez, we hold that the latter case overrules Oswald.

**4.** The pertinent portion of Alaska's kidnapping statute is AS 11.41.300(a)(1):

*Kidnapping.* (a) A person commits the crime of kidnapping if

(1) the person restrains another with intent to

(A) hold the restrained person for ransom, reward, or other payment;

(B) use the restrained person as a shield or hostage;

(C) inflict physical injury upon or sexually assault the restrained person or place the restrained person or a third person in apprehension that any person will be subjected to serious physical injury or sexual assault;

(D) interfere with the performance of a governmental or political function; or

(E) facilitate the commission of a felony or flight after commission of a felony.

subparagraph (a)(1)(E). Because these two counts essentially involved alternative ways of charging the same offense, Yearty's convictions on these two counts plainly must merge.

Count V, which alleged restraint with intent to use M.M. as a shield or hostage, in violation of subparagraph (a)(1)(B), involves conduct and intent that is somewhat different. In considering whether Yearty's use of M.M. as a shield on his way out of the supermarket involved conduct and intent sufficiently distinct to warrant a separate conviction and sentence for kidnapping, however, we find it significant that the hostage-taking charged in Count V occurred as Yearty attempted to flee the scene of the sexual assault. Count VII alleged a violation of AS 11.41.300(a)(1)(E); its language paralleled the statutory language, charging Yearty with restraining M.M. *"with intent to facilitate* the commission of a felony or *flight after the commission of a felony."* (Emphasis added). Because Yearty's use of M.M. as a shield or hostage occurred during his immediate "flight after commission of a felony" and was plainly intended to "facilitate" that flight, Count VII included the conduct and intent charged in Count V.

We recognize that if Yearty had been charged and convicted only under Counts V and VI, there would arguably have been no overlap in the conduct and intent covered by the charges; separate convictions might then have been justified even though both counts arose from a single criminal episode involving a continuous act of restraint. We need not resolve this difficult issue, however, for the state elected to add Count VII to the charges, and Yearty was convicted of that count, as well as of Counts V and VI. Since the broad language of Count VII encompassed Yearty's conduct and intent in restraining M.M. throughout the entire course of Yearty's sexual assault and his flight after committing the assault, Count VII effectively subsumed Counts V and VI. Given the specific circumstances and charges in the present case, we conclude that only a single conviction for the kidnapping of M.M. was permissible.

### 3. *Conclusion on merger claims*

 Because the superior court imposed concurrent sentences on the charges involved in the double jeopardy claims, our disposition has no actual effect on Yearty's sentence. Our ruling nonetheless requires us to remand this case to the superior court with directions to issue an amended judgment in conformity with our decision.[5]

### B. Excessiveness of Total Sentence

 We lastly consider Yearty's claim that his total sentence of forty years is excessive. When he committed these offenses, Yearty was twenty-six years old. He had recently been convicted of two counts of theft in the second degree, class C felonies, and was on probation for those crimes. In addition, Yearty had a 1983 misdemeanor conviction for driving while intoxicated. As a child, he was institutionalized for theft and drug use. Shortly before trial in the current cases, Yearty physically assaulted his appointed attorney in open court—apparently as a means of securing the appointment of substitute counsel.

Yearty has a longstanding history of alcohol and drug abuse. All efforts to address his substance abuse problems have met with failure. In January and February of 1987, Yearty spent less than a month in the Charter North Hospital's substance abuse program before being discharged for verbally abusing hospital staff and threatening a physician. Yearty's prognosis

---

**5.** Since the various counts stemming from the Goose Lake incident that merge are offenses of the same class, the superior court, upon remand, should allow the state to elect the counts *upon which it wishes the modified judgment to be entered.* The election will involve two choices: first, the state should be allowed to elect between a conviction for sexual assault in the first degree and sexual abuse of a minor in the first degree; second, election should be allowed between a conviction for attempted sexual assault in the first degree and attempted sexual abuse of a minor in the first degree. As to the Carrs Supermarket incident, the court should vacate the convictions on Counts V and VI, allowing the judgment on Count VII to stand.

upon discharge was poor; he was diagnosed as suffering from poly-substance addiction, as well as a mixed personality disorder with antisocial and passive-aggressive features.

This diagnosis was confirmed in a psychological report prepared by Dr. James E. Harper in connection with the current cases. In addition to finding that Yearty has serious problems with alcohol and drug abuse, Dr. Harper reported that he suffers from a mixed personality disorder with antisocial, histrionic, passive-aggressive, and borderline features. Dr. Harper also found that Yearty is "quite anxious about his masculinity," and suffers from sexual psychopathology.

Given Yearty's criminal background, his history of problems with alcohol and substance abuse, his psychological makeup, and the seriousness of his conduct in the current cases, Judges Singleton and Johnstone both expressed doubts as to Yearty's prospects for rehabilitation and found him to pose a serious danger to the public. Both judges found it necessary to emphasize isolation as the single most important sentencing goal.

These findings are clearly justified by the sentencing record, as is the composite forty-year term that Yearty received. In *Williams v. State,* 800 P.2d 955 (Alaska App.1990), we recently considered the appropriateness of a lengthy sentence in a kidnap/rape case involving a child. Williams' conduct was in almost all significant respects similar to Yearty's attack on J.L. near Goose Lake. Williams was convicted for kidnapping and forcibly molesting a twelve-year-old boy; like Yearty, Williams was a relatively youthful second felony offender. After surveying Alaska sentencing decisions dealing with kidnap/rape situations, we approved a composite sentence for Williams of up to forty years with ten years suspended. *Id.* at 961.

Yearty's case differs from Williams' in two obvious respects. First, Yearty's serious substance abuse and psychological problems set him apart from Williams, justifying even greater skepticism concerning his prospects for rehabilitation. Second, in addition to his crimes against J.L., which are comparable in seriousness to Williams', Yearty was convicted of two separate episodes of sexually assaultive misconduct against separate victims; one of the episodes involved crimes as serious as those Yearty committed against J.L.

Under *Williams,* a total sentence of forty years with ten years suspended would have been justified for Yearty based solely on the incident involving J.L. Considering the totality of the conduct for which Yearty was convicted, we think that a sentence substantially exceeding that which we approved in *Williams* is justified here. Yearty's case appears to us to be comparable to other cases in which we have approved composite sentences of forty years or more. *See, e.g., Hancock v. State,* 741 P.2d 1210, 1215 (Alaska App.1987); *Wortham v. State,* 689 P.2d 1133, 1145 (Alaska App.1984); *Larson v. State,* 688 P.2d 592, 600 (Alaska App.1984); *Nix v. State,* 653 P.2d 1093, 1101 (Alaska App.1982).

Having independently reviewed the entire sentencing record, we conclude that the sentences imposed below are not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

Subject to our ruling on the issue of merger, the convictions and sentences are AFFIRMED. This case is REMANDED for entry of a modified judgment.

COATS, Judge, dissenting.

I dissent from the court's decision overruling *Oswald v. State,* 715 P.2d 276, 280 (Alaska App.1986). *See, ante,* at 995 n. 3.