**Brian E. ERICKSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–6309.**

Court of Appeals of Alaska.

Dec. 12, 1997.

---

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

## OPINION

MANNHEIMER, Judge.

In *Yearty v. State*, 805 P.2d 987, 995 (Alaska App.1991), this court held that when a defendant commits distinct types of sexual penetration upon a victim during a single

episode of sexual assault, the defendant can be convicted of separate counts of sexual assault for each type of penetration. The appellant in this case, Brian E. Erickson, was convicted of four counts of second-degree sexual abuse of a minor, AS 11.41.436(a)(1). The four counts involved the same victim and arose from a single episode of sexual abuse, but each count alleged a different form of sexual penetration. Pursuant to *Yearty*, the superior court entered four convictions against Erickson. On appeal, Erickson argues that *Yearty* was wrongly decided for two reasons: as a matter of statutory interpretation, and as a matter of constitutional law.

First, Erickson argues that *Yearty* was wrongly decided as a matter of substantive criminal law. He asks us to re-examine and reverse the holding that a defendant who perpetrates distinct types of sexual penetration during a single assaultive episode can be convicted separately for each type of sexual penetration.

Next, Erickson argues that *Yearty*'s holding violates the double jeopardy clause of the Alaska Constitution as construed by the Alaska Supreme Court in *Whitton v. State*, 479 P.2d 302 (Alaska 1970). Erickson asserts that, under *Whitton*, an appellate court is not permitted to create double jeopardy rules for whole classes of cases—rules of general application that will govern all future cases that present the same double jeopardy issue. According to Erickson, the *Yearty* holding violates *Whitton* because *Yearty* establishes this sort of general rule—the rule that separate types of sexual penetration will support separate convictions.

For the reasons explained below, we reject Erickson's arguments and affirm his convictions.

*Introduction: Whitton and the constitutional issue Erickson raises in this appeal*

In *Whitton*, the supreme court established the test for determining whether, under the double jeopardy clause of the Alaska Constitution, a defendant's violation of two different criminal statutes during a single criminal event should be treated as a single punishable offense or as two distinct offenses. The court declared that the sentencing judge should:

> compare the ... statutes in question, as they apply to the facts of the case, to determine whether [the case] involved differences in intent or conduct. [The judge] [sh]ould then [assess] any such differences ... in light of the basic interests of society to be vindicated or protected, and decide whether those differences [are] substantial or significant enough to warrant multiple punishments.

*Whitton,* 479 P.2d at 312.

Erickson's case does not raise the same question presented in *Whitton* (a defendant's violation of two statutes during a single criminal episode), but it involves a related question: whether a defendant's multiple violations of the same criminal statute during a single criminal episode should merge into a single offense. Both of the parties to this appeal agree that a *Whitton* analysis should govern Erickson's case. However, the parties disagree on what *Whitton* requires.

The basic dispute is whether double jeopardy rulings under *Whitton* are ultimately case-specific. *Whitton* issues generally arise in recurring situations: can a defendant be convicted of both armed robbery and felony-murder when the robbery victim dies? *See Todd v. State,* 917 P.2d 674 (Alaska 1996). Or can a defendant who commits sexual assault be convicted of both an attempt and the completed crime? *See Tuckfield v. State,* 621 P.2d 1350 (Alaska 1981). Erickson argues that, even though *Whitton* issues arise in recurring situations, the supreme court wanted trial judges to decide each case individually, again and again making case-specific determinations of the double jeopardy question, with appellate review available to correct abuses of discretion. The State, on the other hand, argues that, under *Whitton*, the question of whether a defendant has committed one offense or two is ultimately a question of law. The State contends that, even though double jeopardy questions are normally decided by trial judges in the first instance, the supreme court envisioned that these questions would ultimately be decided by appel-

late courts who would craft rules of general application to govern recurring situations.

*Yearty* is a case that established a rule of general application: *Yearty* held that distinct types of sexual penetration will support separate convictions for sexual assault. Because of this—because *Yearty* established a general rule to govern future cases—Erickson contends that *Yearty* runs afoul of *Whitton*.

### Whitton does not apply to Erickson's case

■ The first issue we must confront is whether *Whitton* governs this question. As noted above, both Erickson and the State assume that *Whitton* provides the rule of decision in this case. However, as also pointed out above, *Whitton* dealt with a different problem from the one presented in Erickson's case. In *Whitton,* the question was whether a defendant could be convicted of two separate crimes when the defendant's single criminal act violated two different criminal statutes ("robbery" and "use of a firearm during robbery"). Erickson's case, like *Yearty,* raises a different question: whether a defendant can be convicted of separate crimes when the defendant violates the same criminal statute more than once in a single criminal event.

The supreme court confronted this latter question in *State v. Dunlop,* 721 P.2d 604 (Alaska 1986). The defendant in *Dunlop* had recklessly killed two people in a motor vehicle accident; the trial court convicted him of two counts of manslaughter. On appeal, Dunlop contended that his separate convictions violated the *Whitton* rule.

Dunlop's appeal hinged on the continued vitality of *Thessen v. State,* 508 P.2d 1192 (Alaska 1973), a case involving a defendant who set fire to a hotel and killed several people. In *Thessen,* the supreme court applied the *Whitton* rule and concluded that, even though a defendant's reckless conduct might kill several people, the number of victims was essentially fortuitous and the defendant could be convicted of only one count of manslaughter. *Thessen,* 508 P.2d at 1195.

If *Thessen* was still good law, then Dunlop should not receive two manslaughter convictions for killing two people. However, the supreme court held that *Thessen* had been wrongly decided, and it therefore affirmed Dunlop's convictions. *Dunlop,* 721 P.2d at 608–610.

For purposes of deciding whether *Whitton* governs Erickson's appeal, it is crucial to note the reasons the supreme court gave for overruling *Thessen.* The *Dunlop* court drew a distinction between two problems: (1) deciding whether a defendant's violation of two or more statutes by a single act should be considered one "offense" or many, as opposed to (2) deciding whether a defendant's multiple violations of the same statute in a single criminal event should be considered one offense or many. The court then held that *Whitton* does not apply to this second problem.

Explaining why *Thessen* should be overruled, the supreme court explained:

> The [*Thessen*] majority looked ... to *Whitton* for guidance in defining "single offense". [*Thessen,* 508 P.2d] at 1194. Since Thessen violated only one statute, albeit fourteen times, the majority compared one count with another (rather than one statute with another) and applied the *Whitton* test.
>
> ...
>
> After much thought, we conclude that in *Thessen we erred in applying Whitton to multiple violations of a single statute.* ... When several deaths or injuries occur in the course of a single incident, the *offense* prohibited by the statute has been violated several times over.

*Dunlop,* 721 P.2d at 608–09 (first emphasis added; second emphasis in the original) (footnotes omitted). The court further clarified its thinking in footnote 17 of the *Dunlop* opinion, 721 P.2d at 608, where the court declared, "We do not disturb our holding in *Whitton* here. *Whitton* does not apply to these factual situations." [1]

---

1. The supreme court had previously referred to the limited scope of the *Whitton* rule in *Tuckfield v. State,* 621 P.2d 1350, 1352 (Alaska 1981): "It is well settled that double jeopardy is violated by conviction of both an offense and a lesser included offense, unless the convictions arise from separate conduct.... [This] rule is related to, *but distinguishable from, the question considered in*

Under the holding in *Dunlop*, the *Whitton* rule does not apply to Erickson's case. Erickson's case is like *Dunlop* and *Thessen:* Erickson was convicted of violating the same criminal statute four times during a single episode. Under *Dunlop*, *Whitton* provides the rule for determining when two statutes define the same "offense", but *Whitton* does not apply "to multiple violations of a single statute". *Dunlop*, 721 P.2d at 609. Instead, under *Dunlop*, the proper number of Erickson's convictions must be determined by identifying "the gravamen of [Erickson's] offense" and then deciding whether Erickson's conduct violated that statute four times or one. *Id.*

■ The gravamen of second-degree sexual abuse of a minor, defined in AS 11.41.436(a)(1), is sexual penetration of a minor under the age of 16. Under the definition of "sexual penetration" codified in AS 11.81.900(b)(55), as interpreted in *Yearty*, a separate offense of second-degree sexual abuse of a minor is committed whenever the defendant engages in a distinct form of sexual penetration with the victim.

In the present case, the jury found that Erickson had engaged in four distinct types of sexual penetration with the victim. To paraphrase *Dunlop*, "[w]hen several [distinct types of sexual penetration] occur in the course of a single incident, the *offense* prohibited by the statute has been violated several times over." 721 P.2d at 609 (emphasis in the original) (footnote omitted). Erickson was therefore properly convicted of four counts of second-degree sexual abuse of a minor.

*Alternatively, if Whitton does apply to Erickson's case, Whitton contemplates that appellate courts will formulate rules of general application, like the one announced in Yearty, to resolve recurring double jeopardy issues.*

Assuming that the supreme court spoke too freely in *Dunlop* and that the *Whitton* rule applies to Erickson's case, we must confront Erickson's contention that *Whitton* calls for case-specific double jeopardy rulings

and forbids appellate courts from formulating rules of general application to resolve recurring double jeopardy problems.

Some of the language used in *Whitton* supports Erickson's interpretation of the decision. For example, in the passage quoted above, the supreme court called on trial judges to assess whether significant differences in intent or conduct are revealed by "the facts of the case". 479 P.2d at 312. Later in the opinion, the *Whitton* court required trial judges to make an affirmative record of the reasons underlying their double jeopardy rulings; in particular, the supreme court called upon sentencing judges to explain "the relevant factual and other considerations which led [them] to such a decision, in order that the constitutional legitimacy of the [ruling] may be fully reviewed on appeal." *Id.* And, in answer to the anticipated criticism that the *Whitton* test was too vague to provide clear guidance in future cases, the *Whitton* court declared:

> We have stated the factors to be considered by the sentencing judge. We can go no further. At this point, reason and judgment must be exercised. There is no practicable way of formulating in advance any precise standards for the proper or "reasonable" exercise of such reason and judgment.

*Whitton,* 479 P.2d at 313.

Finally, the supreme court indicated that if the sentencing judge made a mistake in applying the *Whitton* criteria and erroneously refused to sentence a defendant for all of the separate offenses he or she had committed, the State could file a sentence appeal. The court conceded that it would have no power to increase the defendant's sentence in such an appeal, *see* AS 12.55.120(b), but the court would be "authorized to express [its] views as to the state's claim of excessive leniency", thus having "the salutary effect of further clarifying this area of criminal law and of obviating ... the same or similar mistakes in future sentencings". *Whitton,* 479 P.2d at 313–14.

*Whitton ... and subsequent cases, concerning when separate punishment may be imposed for*

*separate statutory offenses arising out of the same conduct."* (emphasis added)

These passages make it appear as if a judge's double jeopardy analysis under *Whitton* were merely one aspect of the judge's sentencing decision. However, if this were true, one would expect the *Whitton* court to have remanded Whitton's case to the superior court—so that, employing the just-announced *Whitton* criteria, the judge who sentenced Whitton could re-examine the facts of Whitton's case and re-evaluate the propriety of imposing separate convictions on Whitton for robbery and use of a firearm during robbery. This is not what the supreme court did.

Instead of dealing with the double jeopardy issue as a question entrusted to the sentencing judge's discretion, the court treated the issue as a question of law. The court engaged in a generic analysis of the two criminal statutes, scarcely mentioning the specific facts of Whitton's case, and then announced a rule that was apparently intended to govern all future cases:

> We apply the test we have adopted to this case. Money was taken from persons in a restaurant by appellant and his two accomplices[,] who were armed with a rifle and a pistol. Since the presence of the firearms means that the money was taken by force or violence, or by putting the victims in fear, the crime committed was robbery. And since the force or violence or fear was created specifically by the use of firearms, the more serious crime of robbery with a firearm was also committed.

> The more serious crime differs from the less serious crime in that there can be … robbery with or without a firearm. But the intent and conduct involved in the former encompasses the intent and conduct involved in the latter. Since the more serious offense already proscribes and punishes the activity of the less serious offense, the differences between the two must be deemed insubstantial or insignificant in relation to the social interests involved.

> The result is that the two separate statutory crimes constitute the "same offense" for purposes of double jeopardy. A single sentence was all that could properly be imposed under the double jeopardy provision of our constitution.

*Whitton*, 479 P.2d at 314.

The supreme court has followed this same approach to double jeopardy issues in all of its decisions since *Whitton*. That is, the court has consistently treated double jeopardy issues as questions of law; the court has decided these issues *de novo*, using statutory analysis, rather than reviewing trial court decisions for abuse of sentencing discretion under the particular facts of the defendant's case.

The most recent example is *Todd v. State*, 917 P.2d 674 (Alaska 1996), where the court held that a defendant may be convicted of both felony-murder and the predicate felony (in Todd's case, first-degree robbery). In its holding, the court entirely omitted any discussion of the specific facts of Todd's case and instead focused completely on the statutory elements and underlying social policies of the two offenses:

> Applying the *Whitton* test, we conclude that felony murder and robbery are not the same offense for double jeopardy purposes; therefore, [Todd's separate convictions] are allowable. The statutes differ significantly in the intent and conduct required; the most obvious difference is the requirement under the felony-murder statute that someone have been killed. Moreover, as we discussed above, the statutes also protect different societal interests. The felony-murder statute protects against the loss of human life. "In contrast, the basic rationale of the robbery statute is protection against the terror of forcible taking."

*Todd*, 917 P.2d at 681 (citation omitted).

Similarly, in *State v. Dunlop*, 721 P.2d at 608–610 (when the supreme court decided that a drunk driver could be convicted of several counts of manslaughter for killing several victims in one collision), in *Jacinth v. State*, 593 P.2d 263, 266–67 (Alaska 1979) (when the court decided that a defendant who set fire to a theater and killed the watchman could be convicted of both arson and manslaughter), in *State v. Occhipinti*, 562 P.2d 348, 351 (Alaska 1977) (when the court decided that a defendant could be sepa-

rately convicted for rape, kidnapping, and assault with a deadly weapon), and in *Mead v. State*, 489 P.2d 738, 740–41 (Alaska 1971) (when the court decided that a defendant could be separately convicted of burglary and larceny), the supreme court did not base its decisions on the specific facts of the defendants' cases. Instead, the court focused solely on the statutory elements of the offenses involved and the social policies underlying those offenses. The court did not speak of either the "abuse of discretion" or the "clearly mistaken" standard of review, nor did the court show any other deference to the sentencing courts' decisions. Instead, the supreme court decided these double jeopardy issues *de novo*, and the court gave every indication that it intended its decisions to govern all future cases raising these issues.

Moreover, in *State v. Occhipinti* the supreme court silently disavowed its statement in *Whitton* that a sentence appeal was the State's only remedy for an erroneous *Whitton* ruling. In *Occhipinti*, the sentencing judge misapplied *Whitton* and refused to convict and sentence the defendant separately for the offenses of rape, kidnapping, and assault with a deadly weapon. The supreme court held that these crimes were separate offenses under *Whitton*. The court further ruled that the sentencing judge was legally required to convict and sentence the defendant for each offense proved by the government. *Occhipinti*, 562 P.2d at 349. The court therefore granted the State's petition for writ of mandamus and ordered the sentencing judge to enter the disputed convictions and impose sentence. *Id.* at 349, 351. This ruling was, in effect, another declaration that *Whitton* decisions involve questions of law, not questions of sentencing discretion.

Finally, we note that there is a basic problem with viewing *Whitton* rulings as just another aspect of a sentencing decision. That problem is the "clearly mistaken" standard of review.

■ "Clearly mistaken" is the standard of review that the Alaska Supreme Court employs when reviewing sentencing decisions. *McClain v. State*, 519 P.2d 811, 813 (Alaska 1974). It is a deferential standard of review; that is, it gives considerable leeway

to individual sentencing judges. The "clearly mistaken" test is founded on two concepts: first, that reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; second, that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls within "a permissible range of reasonable sentences". *State v. Wentz*, 805 P.2d 962, 965 (Alaska 1991), quoting *McClain*, 519 P.2d at 813.

If double jeopardy rulings under *Whitton* were deemed just another aspect of a judge's sentencing decision, to be reviewed under the "clearly mistaken" test, this necessarily means that the supreme court would be willing to accept inconsistent double jeopardy rulings in factually identical cases, so long as the discrepancy could be attributed to reasonable differences of opinion or sentencing emphasis among trial court judges. Under Erickson's view of *Whitton*, two identically situated defendants who engaged in exactly the same conduct (with exactly the same results) could receive differing numbers of convictions and sentences—and both of these inconsistent criminal judgements would be upheld on appeal so long as the sentencing judges were not "clearly mistaken".

■ *McClain* and *Wentz* allow such sentencing discrepancies when the issue is how much time a defendant should spend in prison, or how much of their sentence should be suspended, or how long their probation should be. Such decisions are traditionally entrusted to a sentencing judge's discretion, primarily because reasonable judges can and do differ on these matters. It is, however, fundamentally different—and fundamentally unfair—to empower sentencing judges to determine, at their discretion, the number of a defendant's convictions and sentences. The constitutional guarantee against double punishment should apply uniformly to all defendants. We do not believe that the supreme court intended the *Whitton* rule to be interpreted and applied in the manner Erickson suggests.

■ For these reasons, we reject Erickson's contention that *Whitton* forbids appellate courts from formulating rules of general

application to govern double jeopardy issues. The supreme court has repeatedly demonstrated that *Whitton* in fact calls upon appellate courts to formulate rules of general application to resolve recurring double jeopardy issues.

*As a matter of substantive criminal law, we reaffirm the Yearty holding*

Having determined (on alternative bases) that the *Yearty* holding does not violate the supreme court's decision in *Whitton*, we lastly confront Erickson's argument that *Yearty* was wrongly decided as a matter of substantive law.

Erickson was found guilty of second-degree sexual abuse of a minor—sexually penetrating a child under the age of 16. During a single criminal episode, Erickson perpetrated four distinct forms of sexual penetration upon his victim. To determine how many counts of sexual abuse are encompassed by this criminal episode, *Dunlop* instructs us to identify the "gravamen" of the offense. 721 P.2d at 609.

 Erickson argues that, for all intents and purposes, any one form of sexual penetration is identical to any other. He contends that the violation of the victim's bodily integrity and privacy is essentially the same, regardless of how the penetration is perpetrated. *Yearty* came to a different conclusion. In *Yearty*, this court ruled that different forms of sexual penetration constitute different forms of indignity and violation, and they thus merit separate punishment.

We concede that reasonable people might differ on this question. We note, however, that in the years since *Yearty* was decided, the Alaska Legislature has taken no action to indicate its disagreement with this court's conclusion.

 Moreover, it is not enough for Erickson to show that the *Yearty* decision was honestly debatable at the time, and that it might have gone the other way. Under the doctrine of *stare decisis*, a litigant who asks an appellate court to overrule a prior decision must demonstrate convincing reasons why the existing rule "was originally erroneous or is no longer sound because of changed conditions". The litigant must also demonstrate "that more good than harm would result from a departure from precedent". *State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986), quoting *State v. Souter*, 606 P.2d 399, 400 (Alaska 1980). Erickson has failed to meet this burden. We therefore adhere to our prior decision.

*Conclusion*

Under *Yearty*, Erickson was properly convicted of four separate counts of second-degree sexual abuse of a minor. The judgement of the superior court is AFFIRMED.