John L. BERTILSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8032.

Court of Appeals of Alaska.

Feb. 14, 2003.

Dan Allan, Law Offices of Dan Allan, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

Following a jury trial, John L. Bertilson was convicted of felony driving while intoxicated.[1] In this appeal, he raises approximately eighteen claims of error. Among them, he claims that evidence should have been suppressed because the police made an illegal stop and arrest, that the indictment should have been dismissed because improp-

er evidence was presented to the grand jury, and that he was prevented from presenting evidence and from arguing that his blood alcohol content was less than .10 percent at the time he was driving. He also claims that the superior court erred when it refused to exclude police testimony concerning the horizontal gaze nystagmus field sobriety test, and when it refused to exclude the breath test results because police did not strictly comply with testing procedures. Additionally, he claims that the superior court erred when it ruled that reckless driving was not a lesser-included offense of felony driving while intoxicated, and that he was entitled to a new trial because the trial judge did not disclose that one of the prosecutors was the trial judge's former law clerk.

Based on our recent decision in *Conrad v. State*,[2] we conclude that Bertilson is entitled to a new trial because he was prevented from presenting evidence and from arguing that his blood alcohol content was less than .10 percent at the time he was driving. Accordingly, we reverse Bertilson's conviction. We also conclude that the superior court erred when it ruled that reckless driving was not a lesser-included offense of felony driving while intoxicated.

We conclude, however, that the superior court did not err when it found that Bertilson's stop and arrest were lawful, when it refused to exclude police testimony about the horizontal gaze nystagmus test, and when it refused to exclude his breath test results. We do not address Bertilson's claim that the trial judge had a duty to disclose that one of the prosecutors had recently worked for the trial judge as a law clerk because that claim is moot. Because we have concluded that Bertilson is entitled to a new trial, we do not address his other claims of error.[3]

### Facts and proceedings

On November 15, 1999, at about 12:30 a.m., Bertilson was stopped by police because his vehicle matched the description given by a citizen who had called on her cell phone to

---

1. AS 28.35.030(a) & (n).

2. 54 P.3d 313 (Alaska App.2002).

3. These generally addressed jury selection proceedings, trial-related evidentiary rulings, and jury instructions.

report a possible drunk driver. Based on their observations and being aware of the reported erratic driving, police administered field sobriety tests. Bertilson passed one test, but did poorly on four others. Bertilson was then arrested for driving while intoxicated and taken to a police substation for a breath test. The breath test results from the Intoximeter showed that at 2:09 a.m. Bertilson's blood alcohol content was .123 percent. He then had an independent blood test, which showed that at 2:44 a.m. his blood alcohol content was .13 percent.

Because Bertilson had two prior qualifying convictions, he was charged with felony driving while intoxicated under AS 28.35.030(a) and (n). The State alleged that he had committed the offense under either subsection (a)(1) (that the defendant was impaired by the consumption of alcohol), subsection (a)(2) (that the defendant's blood alcohol level was .10 percent or higher), or both. Ultimately, a jury convicted Bertilson. However, the jury returned a general verdict that did not specify whether it had found him guilty under subsection (a)(1), subsection (a)(2), or both.

Prior to trial, the State moved to limit evidence; among other things, the State, based on our decision in *Mangiapane v. Anchorage*,[4] sought to preclude Bertilson from presenting any evidence of how alcohol is absorbed and eliminated from the blood stream to show that his blood alcohol content may have been less than .10 percent when he was driving. This motion was granted in part.

Bertilson also made a number of pre-trial motions. Among other things, he moved to suppress the evidence that he had been driving while intoxicated, to dismiss the indictment, to preclude the police from expressing their opinions about his performance on the field sobriety tests, and to preclude the State from offering the Intoximeter test results. These motions were all denied.

Additionally, near the end of trial, Bertilson asked that the jury be instructed that it could consider reckless driving as a lesser-included offense. After trial, Bertilson sought a new trial asserting, among other things, that the judge who presided over the trial should have disclosed that one of the prosecutors had recently worked for the judge as a law clerk. These requests also were denied.

### Discussion

#### The elements of the "blood alcohol level" theory of driving while intoxicated

■ Bertilson argued below that the State was required to prove that his blood alcohol content was .10 percent or higher at the time he was driving. He contends that Superior Court Judge Larry D. Card erred when he ruled, based on *Mangiapane*, that "the target of the State's prosecution is no longer [the blood alcohol content] at the time of driving [.] . . . The target is [whether] within four hours of driving there is an alcohol test which renders a result of [.10 percent] or greater."

In *Conrad*, we were called upon to construe the elements of AS 28.35.030(a)(2), the "blood alcohol level" theory of driving while intoxicated.[5] We concluded that, despite our discussion in *Mangiapane*, "a defendant's guilt under AS 28.35.030(a)(2) hinges on the defendant's blood alcohol content at the time the defendant operated or controlled a motor vehicle."[6]

Our decision in *Conrad* resolves this issue in Bertilson's favor. Bertilson was charged under both theories of driving while intoxicated. Like Conrad, Bertilson wanted to defend against the " .10" charge by presenting expert testimony that his blood alcohol content, while exceeding the permissible level when tested, was lower than .10 percent at the time he was driving. But, while Bertilson was able to present this evidence,[7] the

4. 974 P.2d 427 (Alaska App.1999).

5. Bertilson, like Conrad, was prosecuted under the former version of AS 28.35.030(a)(2). Since then, the legislature has lowered the allowable level of alcohol to .08 percent. *See* ch. 63, § 9, SLA 2001.

6. *Conrad,* 54 P.3d at 315.

7. This evidence was admitted at trial for the limited purpose of contesting the State's "impairment" theory.

jury was ultimately instructed that under the blood alcohol level theory, Bertilson's guilt hinged on the test result and not on his actual blood alcohol level at the time he was driving. Accordingly, Bertilson is entitled to a new trial.

Although we have concluded that Bertilson is entitled to a new trial, we now resolve some of his remaining claims.

*The lesser-included offense of reckless driving*

■ Bertilson contends that Judge Card should have instructed the jury on reckless driving as a lesser-included offense of driving while intoxicated. Bertilson requested this instruction below, but Judge Card ruled that reckless driving was not a lesser-included offense of *felony* driving while intoxicated. We conclude that this was error. If, under the cognate approach,[8] Bertilson was otherwise entitled to have the jury instructed on reckless driving as a lesser-included offense, then it does not matter whether he was charged with felony or misdemeanor driving while intoxicated.

The State concedes that under *Comeau v. State*[9] and under the facts of this case, Bertilson was entitled to a reckless driving instruction. We conclude that the State's concession has merit.[10] *Comeau* does not stand for the proposition that reckless driving is a lesser-included offense in every driving while intoxicated case, but Bertilson's case falls squarely within the circumstances defined in *Comeau*. In *Comeau*, a majority of this court held that reckless driving is a lesser-included offense of driving while intoxicated when a defendant is charged under the "impairment" theory of AS 28.35.030(a)(1), "the element of intoxication [is] disputed[,] and ... the prosecution support[s] its [impairment] case by proof that the defendant actu-

ally drove in an erratic or dangerous manner."[11] Here, Bertilson disputed whether he was intoxicated, and the State supported its impairment case with evidence that Bertilson drove in an erratic and dangerous manner before he was stopped. Under these circumstances, Bertilson was entitled to have the jury instructed on reckless driving.

Although we conclude that Bertilson was entitled to have the jury instructed on reckless driving as a lesser-included offense, we note that on appeal Bertilson makes an argument that is not supported by *Comeau*. Bertilson in essence argues that he was entitled to the reckless driving jury instruction because any person who drinks any amount of alcohol and drives is per se driving recklessly. We reject this argument. Under AS 28.35.040, to prove reckless driving, the State has to show that a person drove "in a manner that creates a substantial and unjustifiable risk of harm to a person or to property." A person who drinks alcoholic beverages and then drives, but who is not impaired, is not necessarily driving recklessly.

The State invites us to overrule the majority decision in *Comeau* and to adopt the rationale of Judge Singleton's concurrence in that case. We decline to do so. In *Erickson v. State*,[12] we said:

> Under the doctrine of *stare decisis*, a litigant who asks an appellate court to overrule a prior decision must demonstrate convincing reasons why the existing rule was originally erroneous or is no longer sound because of changed conditions. The litigant must also demonstrate that more good than harm would result from a departure from precedent.[13]

Here, the State has not met these burdens.

*Bertilson's motion to suppress evidence*

■ Bertilson contends that Superior Court Judge Stephanie E. Joannides erred

8. *See Hansen v. State,* 845 P.2d 449, 453 n. 1 (Alaska App.1993) (under the cognate approach, "a lesser offense will qualify as 'included' if *under the factual allegations against the defendant,* it would be impossible for the defendant to have committed the charged crime without also having committed the lesser offense.").

9. 758 P.2d 108 (Alaska App.1988).

10. *See Marks v. State,* 496 P.2d 66, 67–68 (Alaska 1972) (holding that a reviewing court must independently review a party's concession).

11. 758 P.2d at 114.

12. 950 P.2d 580 (Alaska App.1997).

13. *Id.* at 587 (internal quotation marks and citations omitted).

when she denied his motion to suppress evidence. Bertilson asserts that the superior court should have suppressed evidence because the police made an illegal stop and arrest. He claims that the police had no reasonable suspicion to justify the traffic stop and no probable cause to arrest him later.

In Bertilson's case, the police dispatcher had a call from a citizen who identified herself and described Bertilson's erratic driving. The caller told the dispatcher that she had been following a possible drunk driver "for quite some ways down the Seward Highway and then eastbound on Northern Lights" and that the vehicle "was doing quite a bit of swerving and . . . was speeding at one point." Additionally, the "vehicle kept swerving over the lanes, crossing the line." The caller also gave the dispatcher a description of the vehicle and its license plate number. The caller had followed the vehicle for some time before contacting the police and was then on the telephone with the dispatcher for about four minutes. The dispatch center relayed this information to patrol units.

Three patrol units quickly found the vehicle in the vicinity; they saw it traveling northbound on Muldoon near DeBarr, and then watched the vehicle make a U-turn. This U-turn was legal, but noticeably wider than normal, and was made "approximately three-quarters of the way across the intersection." Police testified that this type of turn is at the top of indicators that the driver may be intoxicated.

Judge Joannides found that this U-turn served to "corroborate the officers' belief that the defendant's car was the vehicle described by [the police] dispatch." She found, based on the description the caller provided of Bertilson's vehicle and driving, the fact that Bertilson was found in the same area within minutes of the dispatch, and the wide U-turn the police witnessed, that the police were justified in making an investigatory stop.

■ After stopping the vehicle, the police contacted Bertilson. During this contact, the police found that his eyes were watery and bloodshot and that he had an odor of alcohol. Based on this information, and aware of the earlier report of erratic driving, the police conducted typical field sobriety tests. Bertilson failed the "heel-to-toe" test and twice failed the horizontal gaze nystagmus test. He also twice asked for additional directions on the counting test. Judge Joannides found that this information, added to what the police already knew, provided probable cause to arrest Bertilson for driving while intoxicated. The record supports Judge Joannides's findings.

Based on our review of the information that the police had from the dispatcher, and the police officers' own observations, we conclude that Judge Joannides could properly find that the stop was based on the reasonable suspicion that Bertilson was driving while intoxicated. We also conclude that based on the evidence developed during the contact with Bertilson, the police had probable cause to arrest him for driving while intoxicated.

■ In his suppression motion, Bertilson also claimed that suppression was warranted under *Ballard v. State*[14] because the police had placed too much emphasis on his performance on the second horizontal gaze nystagmus test in finding probable cause to arrest him. In *Ballard* we held that evidence of horizontal gaze nystagmus testing "may not, of itself, be sufficient to establish intoxication," and that a person's performance on the test "can not necessarily be tied to a particular blood-alcohol level."[15] Bertilson asserted below that because his performance on the other field sobriety tests was borderline, the police must have improperly relied on the results of the horizontal gaze nystagmus test to decide that he was intoxicated or that he had a particular blood-alcohol level. Judge Joannides rejected this claim, finding that there was no evidence showing that the horizontal gaze nystagmus tests had been the dispositive factor in the decision to arrest Bertilson.

14. 955 P.2d 931 (Alaska App.1998), *overruled on other grounds by State v. Coon,* 974 P.2d 386 (Alaska 1999).

15. *Id.* at 940.

On appeal, Bertilson renews his claim that suppression was warranted under *Ballard.* Again claiming that his other field sobriety test results were borderline, Bertilson argues that the police must have improperly placed too much weight on the fact that he failed the second horizontal gaze nystagmus test to conclude that he might be intoxicated. Bertilson's argument, however, wrongly focuses on the officers' subjective reasons for making the arrest. The officers' subjective reasons for making the arrest are irrelevant.[16] Rather, Judge Joannides was required to "analyze the objective information which the police had at the time when they made an arrest in determining whether there was probable cause to make that arrest."[17] Viewed objectively, the record supports Judge Joannides's decision. The evidence presented to Judge Joannides showed that the police, in addition to the horizontal gaze nystagmus results, had plenty of information upon which to base their conclusion that Bertilson probably was intoxicated.

Based on our review of the record, we conclude that Judge Joannides did not err when she denied Bertilson's motion to suppress. Both the investigatory stop and the arrest were lawful.

### *The motion to dismiss the indictment*

■ Bertilson also contends that the indictment should have been dismissed. He argues that improper evidence was presented to the grand jury and that if this evidence were excised, there would be insufficient admissible evidence to support the indictment. Although Bertilson supports this argument with citations to a grand jury transcript, this transcript is not part of the appellate record. Based on the record before us, we are unable to resolve Bertilson's challenges to the indict-

ment.[18] Bertilson has therefore waived these challenges.

### *The motion to exclude testimony about the horizontal gaze nystagmus test*

■ Bertilson contends that Judge Card should have granted his pre-trial motion to prevent the police from testifying that his failure on the horizontal gaze nystagmus test was enough to establish that he was intoxicated. Bertilson argued below that under *Ballard,* the police officers should not be allowed to give their opinions that he was intoxicated because those opinions were improperly based on his performance on the horizontal gaze nystagmus test.

Judge Card concluded that the officers' testimony on Bertilson's performance on the horizontal gaze nystagmus test was admissible for the purpose it was offered: as one factor for the jury to consider in determining if Bertilson was intoxicated. He acknowledged that the State could not present or use the evidence in a manner that violated *Ballard* by correlating the test with a particular blood alcohol level or placing too much emphasis on its reliability. But Judge Card refused to enter a pre-trial order preventing the officers from expressing any opinion about Bertilson's performance on the test. We conclude that Judge Card did not abuse his discretion. Bertilson provided Judge Card no cogent reason for excluding evidence that is generally admissible in driving while intoxicated cases.

On appeal, Bertilson complains that one of the officers testified in a manner that violated *Ballard.* However, he did not object to this testimony below. Nor can he rely on an event that occurred during the trial to support his claim that the superior court should have granted Bertilson's pre-trial motion to exclude certain evidence.

**16.** *See Beauvois v. State,* 837 P.2d 1118, 1121–22 n. 1 (Alaska App.1992) ("The test is whether, under the facts known to the police officer, the stop of the car was objectively justified.").

**17.** *State v. Kendall,* 794 P.2d 114, 117 (Alaska App.1990).

**18.** *See Jackson v. State,* 31 P.3d 105, 110 (Alaska App.2001) (citing *Ketchikan Retail Liquor Dealers Ass'n v. State, Alcoholic Beverage Control Bd.,*

602 P.2d 434, 438–39 (Alaska 1979), *modified at* 615 P.2d 1391 (Alaska 1980)) (holding that a party's failure to designate a record to support the party's claims justifies a reviewing court in deciding those claims against the party); *see also Miscovich v. Tryck,* 875 P.2d 1293, 1304 (Alaska 1994) ("It is well established that a party's failure to designate portions of the record that are necessary to allow the determination of a point on appeal will amount to a waiver or abandonment of that point.").

### The motion to exclude the Intoximeter results

■ Bertilson also contends that Judge Card should have entered an order precluding the State from introducing the Intoximeter test results. Below, he argued that this evidence should be excluded because the police had failed to comply with several Intoximeter processing procedures. Specifically, he asserted below, and repeats on appeal, that the police failed to check Bertilson's mouth for foreign substances, failed to ensure that no two-way radios were operating near the Intoximeter, and failed to restart the testing procedures when Bertilson had a "violent coughing fit." Judge Card refused to exclude the Intoximeter evidence based on these arguments; he ruled, however, that Bertilson could raise these issues in cross-examination.

In *Oveson v. Anchorage*,[19] the Alaska Supreme Court held that the results of a breath test were admissible even though the test was not done in strict compliance with regulatory procedures.[20] In light of *Oveson*, we conclude that Judge Card did not abuse his discretion when he refused to exclude the Intoximeter test results.

### Whether Bertilson was entitled to a new trial because Judge Card did not disclose that one of the prosecutors had been his law clerk

Bertilson contends that Judge Card should have disqualified himself because the prosecutor was his former law clerk. In the alternative, Bertilson argues that Judge Card was at least obliged to disclose this relationship so that Bertilson could challenge the judge. Because we are reversing Bertilson's conviction and because Bertilson is now aware of the judge's former professional relationship with the prosecutor, Bertilson's claim is moot. If he is retried, the same prosecutor represents the State, and Judge Card is reassigned the case, Bertilson can raise these issues at that time.

19. 574 P.2d 801 (Alaska 1978).

20. *See id.* at 804–05.

### Conclusion

Bertilson's conviction is REVERSED. When prosecuting a defendant for driving while intoxicated, the State has to prove that a defendant is either impaired or has the prohibited blood alcohol level at the time of operating or controlling a motor vehicle.

Additionally, reckless driving is a lesser-included offense of felony driving while intoxicated under the facts of Bertilson's case.

The decisions of the superior court denying Bertilson's motion to suppress evidence based on his stop and arrest, his motion to exclude police testimony about the horizontal gaze nystagmus test, and his motion to exclude the breath test results are AFFIRMED.

MANNHEIMER, Judge, concurring.

I am writing separately to address the State's contention that we should revisit and overrule *Comeau v. State*, 758 P.2d 108 (Alaska App.1988).

In *Comeau*, a majority of this Court held that reckless driving is a lesser included offense of driving while intoxicated if (1) the defendant is charged under the "under the influence" theory codified in AS 28.35.030(a)(1), and (2) the defendant disputes being under the influence, and (3), to prove the defendant's impairment, the State relies on evidence that the defendant drove erratically or dangerously.[1] Judge Singleton dissented from this decision, arguing that the majority had misapplied Alaska's cognate approach to lesser included offenses.

Judge Singleton pointed out that, even though the same evidence may often be sufficient to prove both driving while intoxicated and reckless driving, a person may be found guilty of driving under the influence of intoxicants even though the person did not drive "in a manner which create[d] substantial and unjustifiable risk of harm to a person or to property"—a necessary element of reckless driving as defined in AS 28.35.040(a). Thus,

1. *Comeau*, 758 P.2d at 114.

reckless driving is not necessarily included within the act of driving while intoxicated.[2]

I believe that Judge Singleton's dissent is correct: this Court misapplied the cognate approach in *Comeau*. However, this by itself is not a sufficient reason to overrule *Comeau*. As this Court explained in *Erickson v. State*, when a litigant attacks a rule of law established in one of our prior decisions, the doctrine of *stare decisis* requires the litigant to convincingly demonstrate not only "[that] the existing rule was originally erroneous" but also "that more good than harm would result from a departure from precedent".[3]

The State does not assert that the *Comeau* decision has led to injustice or that it otherwise frustrates the proper working of the criminal justice system. As Judge Singleton pointed out in his dissent, the *Comeau* rule affects only a small proportion of DWI cases—cases in which the defendant is prosecuted solely under the "under the influence" theory (and not the "blood-alcohol" theory codified in AS 28.35.030(a)(2)), and in which the defendant disputes being under the influence and the State relies on evidence that the defendant drove erratically or dangerously as circumstantial· evidence of the defendant's impairment.[4] Because the State has not shown (or even argued) that the *Comeau* rule has led to harmful results, I join my colleagues in rejecting the State's request to revisit and overrule *Comeau*.

**2.** *Id.* at 121–23 (Singleton, J., dissenting).

**3.** *Erickson,* 950 P.2d 580, 587 (Alaska App.1997).

**4.** *Comeau,* 758 P.2d at 118 & n. 1 (Singleton, J., dissenting).