**Angelo JOSEPH, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10795.

Court of Appeals of Alaska.

Dec. 14, 2012.

Rehearing Denied Dec. 31, 2012.

---

**490**

David D. Reineke, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

1. *See Silvera v. State,* 244 P.3d 1138, 1143–44

*OPINION*

BOLGER, Judge.

Angelo Joseph raises several issues related to his convictions for sexual assaults committed against his wife, R.C. He argues that there was insufficient evidence to support his convictions because R.C. was reluctant to testify and she believed that a husband should not be punished for sexually assaulting his wife. But we conclude that the evidence that Joseph forced his wife to engage in sexual penetration and sexual contact was sufficient to support his convictions.

Joseph also argues that his multiple convictions for sexual assault should be merged to avoid double jeopardy. He urges us to overturn the cases holding that distinct types of sexual penetration will support separate convictions for first-degree sexual assault. We conclude that we should follow our recent cases declining to reexamine this rule. On the other hand, we conclude that Joseph's convictions for second-degree sexual assault, related to this same incident, must merge with his convictions for first-degree sexual assault.

### Background

Because Joseph contends that the evidence was insufficient to support his convictions, we summarize this trial testimony in the light most favorable to the verdicts.[1] Joseph picked up R.C. and her two sons at the Anchorage airport late at night when they returned from a trip to New York. When they got home, the boys (who were nine and five at the time) went to bed, and R.C. began to check her computer to see what work orders she had for later that day.

Joseph said he wanted to have sexual intercourse, but R.C. told him she did not want to. Joseph picked her up and carried her to the bedroom. R.C. testified that Joseph removed her underwear and began to perform cunnilingus on her, even though she told him she did not want to have sex.

When R.C. began to struggle, Joseph hit her on the left side of her face. She continued to struggle, and Joseph choked her with

(Alaska App.2010).

his hands. Joseph did not stop choking her until the boys came into the bedroom. The older son yelled something, and Joseph stopped choking R.C. Joseph then left the room and put the boys back to bed.

When Joseph returned to the bedroom, R.C. again told him that she didn't want to have sex, but he began having sex with her anyway. R.C. decided not to struggle because she "didn't want anything else to happen." Joseph made R.C. engage in genital intercourse, he performed cunnilingus on her, he touched her breasts, and he touched her genitals. Afterward, Joseph talked to her for a couple of hours until he fell asleep. R.C. took the boys to her aunt's house, then went to the police station.

A grand jury indicted Joseph on seven counts that were later presented to the trial jury: first-degree sexual assault for cunnilingus before the children interrupted; first-degree sexual assault for cunnilingus after the interruption; first-degree sexual assault for genital intercourse; second-degree sexual assault for placing his hand on R.C.'s breast; second-degree sexual assault for placing his hand on R.C.'s genitals; second-degree assault for strangling R.C.; and fourth-degree assault for recklessly causing physical injury to R.C.

Despite R.C.'s description of this assault, she testified that she did not agree with the charges against Joseph because they were married and because the incident happened in their bedroom. When Joseph's defense attorney asked R.C. if she believed that Joseph raped her, she said no. But the jury eventually convicted Joseph of all seven counts.

At sentencing, Joseph's attorney argued that the sexual assault charges should merge for sentencing purposes because they all offended the same societal interests. Judge Volland ruled that separate sentences were warranted because the sexual assaults were distinct in their nature and addressed different societal interests. Joseph now appeals, arguing that there was insufficient evidence

to convict him of sexual assault and that his sexual assault convictions should be merged.

### Discussion

*There was sufficient evidence to support Joseph's sexual assault convictions.*

■ Joseph first argues that there was insufficient evidence to support his sexual assault convictions. When we review a claim of insufficient evidence, we ask whether a reasonable juror could conclude that the State had proven the defendant's guilt beyond a reasonable doubt.[2]

■ Joseph does not argue that the State failed to meet its burden of proof on any element of these offenses. Instead, he argues that there were problems with the State's case: R.C. testified that she did not believe that Joseph had raped her; R.C. was reluctant to testify; and there was no medical evidence to corroborate R.C.'s testimony. But when we rule on a claim of insufficient evidence, we do not weigh the evidence; we view the evidence in the light most favorable to the jury's verdicts.[3]

■ Viewed in this light, the evidence established that Joseph used force when he carried R.C. to the bedroom, removed her underwear, and engaged in sexual penetration. Then Joseph attacked R.C. when she began to struggle. After the boys interrupted, Joseph again forced R.C. to engage in sexual penetration. From this evidence, a reasonable juror could conclude that Joseph coerced R.C. to engage in sexual penetration and sexual contact.[4]

■ It is true that R.C. testified that she did not believe that Joseph had raped her. But she also stated that it would have been rape if another man had done it and that the fact that she was married to Joseph made a difference to her.

■ R.C.'s testimony reflects a legal attitude that is long outdated. Historically, a man could not be convicted of rape for forc-

---

**2.** *Cleveland v. State,* 258 P.3d 878, 885 (Alaska App.2011).

**3.** *Silvera,* 244 P.3d at 1143–44.

**4.** *See* AS 11.41.410(a)(1); AS 11.41.470(8).

ing his wife to engage in sexual intercourse.[5] But marriage is no longer a defense to sexual assault.[6] In this case, R.C. testified that Joseph engaged in sexual relations with her without her consent, and this testimony was sufficient to sustain his convictions.

*Joseph's convictions for first-degree sexual assault do not merge.*

■ Joseph also argues that the double jeopardy clause of the Alaska constitution required the sentencing judge to merge his three convictions for first-degree sexual assault. Joseph urges us to overrule our decisions in *Yearty v. State*[7] and *Erickson v. State*,[8] which held that distinct types of sexual penetration that occur as part of a single criminal incident will support separate convictions for sexual assault.[9] On this issue, Joseph bears a heavy burden to overcome the doctrine of *stare decisis*. We will overrule a prior decision only if we are "clearly convinced that the [precedent] was originally erroneous or is no longer sound because of changed conditions" and that "more good than harm would result from a departure from precedent." [10]

This court recently considered similar arguments in *Lincecum v. State*[11] and *Iyapana v. State*.[12] In those cases, we declined to overrule our prior decisions, and we remain convinced that we should not do so today.

■ The changed conditions that Joseph relies on are the increased penalties for first-degree sexual assault. He notes that, under the 1997 version of AS 12.55.125, a first-time felon was subject to a presumptive term of eight years. Under the current version of AS 12.55.125, a first-time felon is subject to a presumptive term of 20 to 30 years. Also, under the current framework, the trial court must impose at least one-fourth of the presumptive term consecutively for each additional conviction of first-degree sexual assault.[13]

■ However, the legislature is presumed to be aware of pertinent court decisions when it amends a statute.[14] *Yearty* and *Erickson* both involved multiple convictions imposed for a single incident. So when the legislature increased the penalties for sexual assault, the legislature was on notice that, under these decisions, a defendant could be convicted of multiple offenses committed during a single incident. The legislature did nothing to mitigate this rule. We thus conclude that the legislature's decisions to increase the penalties for sexual assault do not require us to overrule the cases that define when multiple convictions violate double jeopardy.

■ Moreover, sexual assault convictions need not merge if there is a sufficient break between the offenses.[15] Here, Joseph first performed cunnilingus on R.C.—the misconduct that formed the basis for Count 1. Joseph then physically assaulted R.C. when she began to struggle, but he stopped when the two boys came into the room. After Joseph put the boys back to bed, he forced R.C. to engage in genital intercourse and performed cunnilingus on her again—the misconduct that formed the basis for Counts 2 and 3.

Even if these events took place relatively quickly, Joseph clearly stopped the first sexual assault when he began beating R.C. Joseph was interrupted by the children, talked to them in the bedroom for a short time, and

---

5. *See* 2 Wayne R. LaFave, *Substantive Criminal Law*, § 17.4(d) (2d ed. 2003).

6. *See* 11.41.432(b).

7. 805 P.2d 987 (Alaska App.1991).

8. 950 P.2d 580 (Alaska App.1997).

9. *Yearty*, 805 P.2d at 990, 995; *Erickson*, 950 P.2d at 583–84.

10. *Wilson v. State*, 207 P.3d 565, 570 (Alaska App.2009) (Stewart, J., concurring) (quotation and alterations in original omitted).

11. Mem. Op. & J. No. 5877, 2012 WL 4039820 (Alaska App. Sept. 12, 2012).

12. 284 P.3d 841 (Alaska App.2012).

13. *See* AS 12.55.127(c)(2)(E).

14. *Shea v. State, Dept. of Admin.*, 267 P.3d 624, 633 n. 33 (Alaska 2011).

15. *See Oswald v. State*, 715 P.2d 276, 281 (Alaska App.1986), *overruled on other grounds as recognized in Iyapana v. State*, 284 P.3d 841, 852 (Alaska App.2012).

left the bedroom to put the children to bed. These circumstances provide a sufficient break to support separate convictions for Joseph's misconduct before and after the children's interruption.

On the other hand, Counts 2 and 3 were part of the same incident after the children's interruption, with no significant break between them. But these two counts involved different types of sexual penetration—cunnilingus and genital intercourse.[16] Under the rule discussed above, these different types of sexual penetration will support separate convictions.[17] We thus conclude that the sentencing judge correctly decided to enter separate convictions for all three counts of first-degree sexual assault.

*Joseph's convictions for second-degree sexual assault merge with his convictions for first-degree sexual assault.*

Joseph also argues that his convictions for second-degree sexual assault (for forcible sexual contact with R.C.) should merge with his convictions for first-degree sexual assault (for forcible sexual penetration). On this issue, Joseph has the advantage of more favorable precedent. In *Johnson v. State,* we stated that "two acts of sexual contact performed as part of a single transaction with a single incident of sexual penetration permit but one conviction for the most serious contact, in this case the sexual penetration."[18] Likewise, in *Harvey v. State,* we stated that "It is a well-settled rule that an act of sexual touching and an act of sexual penetration will not constitute separate crimes if they occur on a single occasion and the touching is merely preliminary to the penetration...."[19]

█ In this case, most of the testimony at trial described the first-degree sexual assault misconduct, not the second-degree sexual assaults. During R.C.'s direct examination, the prosecutor questioned her very briefly with respect to these charges:

Q.  I need to talk to you about the specific acts that occurred when he came back [into the bedroom after putting the boys to bed]. Did he put his penis inside your vagina?

A.  Yes.

Q.  Did he again have oral sex with you?

A.  Yes.

Q.  Did he touch your breasts?

A.  Yes.

Q.  Did he touch your genitals?

A.  Yes.

From this testimony, it appears that Joseph touched R.C.'s breasts and genitals during a single incident, which also involved sexual penetration. Based on the rule we stated in *Johnson* and *Harvey,* we conclude that Joseph's convictions for second-degree sexual assault must merge with his convictions for sexual assault in the first degree.

### Conclusion

We VACATE Joseph's separate convictions and sentences for second-degree sexual assault on Counts 4 and 5. The superior court shall amend its judgment to reflect a single conviction for first-degree sexual assault based on the jury's verdicts on Counts 3, 4, and 5, and the superior court shall resentence Joseph.[20]

In all other respects, the judgment of the superior court is AFFIRMED.

### Order

The Appellant, Angelo Joseph, seeks reconsideration of our decision to affirm his separate convictions for two contemporaneous acts of sexual assault, one involving cunnilingus and the other involving genital intercourse. *See Joseph v. State,* —— P.3d ——, Opinion No. 2382 pp.7–8 (December 14, 2012).

Joseph argues that these two convictions should merge because they were both based

---

16.  *See* AS 11.81.900(b)(59).

17.  *See Iyapana,* 284 P.3d at 852.

18.  762 P.2d 493, 495 (Alaska App.1988).

19.  Mem. Op & J. 3489 1996 WL 658501 at *7 (Alaska App. Nov. 13, 1996) (citing *Johnson,* 762 P.2d at 495).

20.  *See Allain v. State,* 810 P.2d 1019, 1021–22 (Alaska App.1991).

on "sexual penetration of the same bodily opening during the same incident". But on this issue, we conclude that our decision in Joseph's case is consistent with our prior decisions in *Erickson v. State*, 950 P.2d 580, 584–87 (Alaska App. 1997), and *Yearty v. State*, 805 P.2d 987, 995 (Alaska App. 1991). *See also Lincecum v. State*, unpublished, Alaska App. Memorandum decision No. 5877, 2012 WL 4039820 (September 12, 2012).

Accordingly, Joseph's petition for rehearing is DENIED.

Entered at the direction of the Court, with Judge Mannheimer concurring.

Judge MANNHEIMER, concurring.

Joseph's petition for rehearing is premised on the assertion that cunnilingus and genital intercourse both require proof of physical penetration of the female genitals. But in *Murray v. State*, 770 P.2d 1131, 1138–39 (Alaska App. 1989), this Court rejected the contention that cunnilingus required proof of genital penetration. Instead, we endorsed the view that cunnilingus encompasses "[a]ll

sexual activity involving oral contact with the female genitals", regardless of whether that contact includes penetration of the genitals. *Ibid.*

This is the majority view in the United States.[1]

Alaska's definition of sexual penetration, codified in AS 11.81.900(b)(59)(A), specifies that the term "sexual penetration" includes both genital intercourse *and* cunnilingus. Because cunnilingus does not require proof of penetration, cunnilingus and genital intercourse are distinct forms of "sexual penetration" under the statute, and these two types of conduct can support separate convictions for sexual assault.

I therefore concur in the decision to deny Joseph's petition for rehearing.

1. *See State v. Randolph*, 735 S.E.2d 845, 854–55 (N.C.App. 2012) ("Cunnilingus is the slightest touching by the lips or tongue of another to any part of a woman's genitalia."); *State v. Bailey*, 78 Ohio App.3d 394, 604 N.E.2d 1366, 1367 (Ohio App. 1992) (holding that cunnilingus does not require proof of penetration: "the law requires no further activity to constitute cunnilingus beyond the placing of one's mouth on the female's [genitals]"); *State v. Lynch*, 98 Ohio St.3d 514, 787 N.E.2d 1185, 1204 (Ohio 2003) (holding that penetration is not required to commit cunnilingus; "[r]ather, the act of cunnilingus is completed by the placing of one's mouth on female genitals"); Wisconsin Statutes § 948.02(1)(a) ("In this subsection, 'sexual intercourse' means vulvar penetration *as well as* cunnilingus, fellatio, or anal intercourse between persons or any intrusion of any inanimate object into the genital or anal opening either by the defendant or upon the defendant's instruction."); *State v. Hardwick*, unpublished, 2011 WL 855854, *2 (Del. Super 2011) (" 'Cunnilingus' means any oral contact with the female genitalia."); *In re R.N.*, 206 N.C.App. 537, 696 S.E.2d 898, 902 (2010) ("As our Supreme Court has held, cunnilingus, which is defined as the "stimulation by the tongue or lips of any part of a woman's genitalia[,]" may

occur without penetration of the female genitalia. *State v. Ludlum*, 303 N.C. 666, 672, 281 S.E.2d 159, 162 (1981)."); *State v. Bullock*, 179 S.W.3d 413, 415–16 (Mo.App. 2005) (" 'Cunnilingus' is defined in *Webster's Third New International Dictionary* as "stimulation of the vulva with the lips or tongue." [*State v.*] *Pollard*, 588 S.W.2d [212,] 215 215 [(Mo.App. 1979)] (quoting *State v. Thompson*, 574 S.W.2d 432, 434 (Mo. App. 1977)). "Because of the anatomy of the mouth and the female genitalia, we believe that any contact between the mouth or its component parts and the vulva is sufficient to constitute the offense of cunnilingus." *Id.*).

See also *Webster's New World College Dictionary* (4th Edition, 2004), which defines "cunnilingus" as "a sexual activity involving oral contact with the female genitals". *Id.* at 354.

*But see Welch v. Commonwealth*, 271 Va. 558, 628 S.E.2d 340, 343 (2006) ("[T]o prove cunnilingus, the Commonwealth must prove that there was penetration of any portion of the vulva by the mouth or tongue."); *Horton v. Commonwealth*, 255 Va. 606, 499 S.E.2d 258, 261–62 (Va. 1998) ("[W]e conclude that penetration of any portion of the vulva is sufficient to prove sodomy by cunnilingus.").